No. 2502.

JOSIAH WATSON v. B. A. BAKER.

1. STATUTE OF FRAUDS—MEMORANDUM IN WRITING.—A memorandum in writing must describe the land, the subject of the contract, with sufficient exactness to render its identity certain, upon the introduction of extrinsic evidence, simply disclosing the condition of the parties at and immediately before the making of the contract. (Pom. on Spec. Per., sec. 90.)

2. PAROL EVIDENCE TO AID SUCH MEMORANDUM.—Parol evidence can not add to an imperfect contract a material part in order to sustain it, but it can apply a description in it to the subject of the contract.

3. WRITTEN MEMORANDUM DESCRIPTION SUFFICIENT.—In a letter by the vendor from "Mt. Vernon, Texas," offering lands described therein as "my property which is situated six miles northwest of this place, consisting of lands and other property as follows: Twenty-five hundred acres of land, divided as follows: Two hundred acres in farm, five hundred fenced pasture, six hundred and thirty unfenced, balance timber, all lying in one body.   *   *   *   My farm is situated on the north side of White Oak creek, one mile from the bottom," etc.  The land having been pointed out to the vendee, and the proposition to sell accepted, *held* that the land was sufficiently described under the statute of frauds.

4. RESCISSION—DELAY.—A vendee entered into possession of a farm and stock thereon.  After taking possession discovery is made that one of the several parcels or surveys making up the aggregate acreage sold is detached from the main body about half a mile distant.  Discovery was made in March.  In June the vendee sold part of the personal property from the farm.  August 10 he brought suit to rescind, and pending suit he sold the greater part of the stock on the farm.  No offer before or during the pendency of the suit was made to place the vendor in statu quo.  *Held*, that while such conduct and delay was strongly against the right to rescind, still the vendee had the right to reasonable abatement in the purchase money from the effect of the detached locality of part of the land sold.

5. MISTAKE.—As affecting the right of a vendee to compensation for a misrepresentation as to the subject of the sale, there is no distinction between misrepresentations made knowingly or by mistake.  A false representation, however innocently made, if damage follow, will give the injured party a right to compensation.

6. PAROL SALE OF LAND—AGREEMENT BY PURCHASER TO PAY.—It seems in a parol sale of land followed by possession, the vendee promising to pay a stipulated price, and receiving and holding possession of the land, the vendor being willing to carry out the sale and tendering a deed for the land, that the vendee can not defeat recovery of the purchase money under the statute of frauds.

7. SAME.—If the vendee obtain the possession of the land and obligate him-
self to pay for it, he can not defeat the obligation by reason of his
having failed to have the vendor bind himself, and the less so when
the vendor is willing to complete the sale, and in seeking the payment,
tenders his deed for the land.

APPEAL from Hopkins. Tried below before Hon. S. B.
Pounders, Special District Judge, in place of Hon. J. A. B.
Putman.

Appellant Watson sued appellee Baker in the district court
of Hopkins county about August 10, 1885, to rescind a sale
from Baker to Watson (made about December, 1884), of two
thousand five hundred acres of land, two hundred head of
cattle, one hundred head of hogs, seven horses and mules and
a lot of farming tools, etc., and to recover four thousand dol-
lars paid Baker; setting up fraud on Baker's part as the ground
for rescission.

Baker answered, pleading to the jurisdiction of the court,
denying Watson's allegations of fraud, acknowledging that
he was mistaken as to the locality of the six hundred and
twenty-nine acre tract, which he had believed adjoined the
remainder of the land, and offering to pay appellant any dam-
ages he had sustained on account of his (Baker's) mistake.
Judgment in this case was for Baker. Watson appealed, and
said judgment was reversed. (67 Texas, 48.) Pending said
appeal of Watson v. Baker, appellee sued appellant in the dis-
trict court of Hopkins county for eight thousand dollars, the
purchase money for said land, and to foreclose a vendor's lien
on same; said cause being numbered on said docket No. 2366.
At the spring term of said court, 1887, the district Judge or-
dered the parties (both suits being then pending) to replead,
with Baker as plaintiff, whereupon appellee as plaintiff and
appellant as defendant filed new pleadings; appellee setting
up the sale of all said property to Watson in December, 1884;
that appellee vacated the premises and appellant took posses-
sion of same, together with all the personal property, about
January 1, 1885, appellant agreeing to execute his notes and
appellee agreeing to execute to him a deed to the lands in a
few days.

Watson answered by demurrers, general and special, gen-
eral denial, allegations of fraud upon the part of Baker,
that the land was worthless for a stock farm (for which pur-

pose it was bought), disconnected and out of shape, and asking a recission; but never offering to put Baker in statu quo.

Appellee replied by demurrer, etc., denying the fraud, alleging that he represented the six hundred and twenty-nine acre tract as cornering with the main tract; acknowledging his mistake as to the location of the corner; offering compensation in damages; denying appellant's ability to place him in statu quo, alleging that appellant had disposed of, etc., all the personal property; torn down and burned up the fencing and out houses on the place; cut down and destroyed and otherwise damaged the property so as to make it inequitable to rescind.

The history of the negotiations is given by Baker as witness on the trial: "About the twenty-eight November, 1884, I received a letter from plaintiff dated Mt. Vernon (producing it).

"MT. VERNON, TEXAS,
"November 28, 1884.

"Dr. J. Watson, Marlin, Texas:

"DEAR SIR: Through our mutual friend, Prof. J. A. Cox, I am told that perhaps you would buy my property which is situated six miles northwest of this place, consisting of lands and other property as follows, viz:

"Twenty-five hundred acres of land divided as follows: Two hundred acres in farm, five hundred fenced pasture, six hundred and thirty unfenced, balance timber, all lying in one body. There are four hundred or five hundred acres of good prairie grass land joining me which can be bought reasonably cheap. I have two hundred head of cattle, seventy-five of which are cows, and twenty-five or thirty heifers; have three fine bulls, two of them half breeds—the other full blood Durham, worth one hundred and fifty dollars—have seven head of horses and mules, and one hundred head of hogs.

"There is on the place a horse gin, but houses and press need repair. I have a good lot of farming tools of all kinds, with reaper, mower and hay rake. My farm is situated on the south side of White Oak creek, one mile from the bottom, which latter furnishes a splendid hog range and good winter range for cattle. My water supply is simply inexhaustible. My land is good—my timber supply abundant and of the best quality. My residence is good and commodious, with two fine cisterns in the yard. I have a large and well arranged barn and other out buildings, with four tenement houses on

the place, the latter, however, are somewhat out of repair. Stock and business men in this community all agree that mine is one of the best stock farms in East Texas, and I think I offer the best bargain in this part of the State.   I am getting old and have no children—am afflicted and the property no longer suits me.   I will sell the above for fifteen thousand dollars cash, or for five thousand dollars cash with remainder on time to suit purchaser, with twelve per cent interest.   I also have forage sufficient to winter my stock, which I will sell if wanted. Let me hear from you. If you do not wish to buy yourself perhaps you can send me a buyer.

            "I remain yours truly,

[Signed.]                                        "B. A. BAKER."

In answer to this letter I (witness), went to see Baker   *   * This was the fifteenth December.   We took dinner with Baker, and after dinner we all three rode out to look at Baker's property.   We first went down into Baker's farm north of his house and looked at it.   Baker said there were two hundred acres in the farm.   After looking at his farm we went into his pasture. He said there were five hundred acres in that.   We went out of the pasture near the southwest corner of same, and then went southeast to the south line of the Trevenio survey.   Baker had a paper in his hand which he used as a guide.   I did not examine it nor did he show it to me.   Then we went around the place and back to the house.   On our way back to the house, on our way around we saw some horses and cattle which Baker claimed.   Baker asked me fifteen thousand dollars for his property and I offered him ten thousand dollars cash, which he refused to take, and I went home to Falls county, Texas.

On the nineteenth of December I wrote Baker a letter which is as follows:

                           "MARLIN, TEXAS, ⎱
                    "December 19, 1884.  ⎰

"Capt. A. B. Baker, Mt. Vernon, Texas:

   "DEAR FRIEND:  After I left you on my way home, had a proposition to engage with him in a lumber business, and reserved the right to confer with you regarding our trade, thinking you may have changed your mind and concluded to accept my proposition.   I think I offered you a fair price for your property and am candid with you.   I dont think the property

is worth to you as much as the money, everything ·considered; but of this you must be the judge. I have offered you all that it is worth to me, and all. that I could give. I will give you five thousand·dollars in cash and five thousand dollars the first January, 1886, with twelve per cent interest, if it suits you; otherwise the matter is at an end, and no harm to either of us. I will ask that you let me hear from you by return mail.    *    * (Signed)                                        "J. WATSON."

(Witness continues): "On the next day·I wrote to Baker the following letter, to wit:

"MARLIN, TEXAS, }
"December 20, 1884.  }

"Col. B. A. Baker, Mt. Vernon, Texas:

"DEAR FRIEND: After writing you concerning our land and stock trade, will ask that you, on receipt of this, wire me at my expense what your answer is, as I have another matter urging me for reply. Had better send telegram from Sulphur Springs, as they are very tardy from Mt. Pleasant.    *    *
"J. WATSON."

(Witness continues): "On twenty-fifth December, 1884, I received the following telegram:

"MT. PLEASANT, TEXAS, }
"12–25, 1884.  }

"To J. Watson:

"Will take twelve thousand dollars with your proposition for payments. Answer at once.
"B. A. BAKER."

In answer to said telegram I sent the following original telegram written by me (Watson.)

"MARLIN, TEXAS, }
"12–26, 1884.  }

"To B. A. Baker:

"I will give twelve thousand dollars with four thousand cash; four thousand first January, 1886, and four thousand first January, 1887. Answer.
(Signed)                                        "J. WATSON."

In answer to this I received the following telegram:

                     "Mt. Pleasant, Texas,
                         "12–26, 1884.

"I accept your proposition with the understanding that the notes bear twelve per cent interest from date.    Answer.
(Signed)                                "B. A. Baker."

In answer to which I sent the following:

                     "Marlin, Texas,
                         "12–27, 1884.

"To B. A. Baker:
"I have said all I will do.    Answer.
                               "J. Watson."

In answer to which I received the following:

                     "Mt. Pleasant, Texas,
                         "12–29, 1884

"To J. Watson:
"I accept your proposition.    Come ahead.    Answer.
                               "B. A. Baker."

To which I replied by telegram in words as follows:

                     "Marlin, Texas,
                         "12–29, 1884.

"To B. A. Baker:
"All O. K.    Will be there by the 5th.
(Signed)                                "J. Watson."

The telegrams were all shown to the witness and recognized as the telegrams sent and received by him.    Then all the above letters and telegrams were read in evidence by the plaintiff.

Watson moved to the premises early in January, 1885, and on February 7 paid one thousand dollars, having paid three thousand dollars some days before.    The parties met at Mt. Vernon to execute papers.    Baker had a deed prepared, which was acknowledged by himself and wife.    Watson had the two notes for the deferred payments prepared in accordance with the agreement, describing all the parcels making up the entire

quantity of land, with the vendor's lien retained. These notes were not signed. Watson becoming offended at Baker asking a lien upon the personal property, Baker yielded, but Watson persisted in refusing to sign the notes, but said he would pay the money, etc.

He remained in possession. In June, 1885, he sold the reaper from the farm. August 10 he brought suit to rescind. While the suit was pending he sold off the cattle, hogs and mules which he had bought on the farm.

After the suit Baker bought a strip of land thirty feet in width, extending from the southwest corner of the main body of the land south five hundred and twenty varas, thence west six hundred and twenty-five varas in length, thus connecting the lands the subject of the controversy. The deed for this connection was tendered Watson on the trial. The detached tract was shown to be of equal value with land of similar shape and cornering upon the southwest corner of the main tract. It appeared that Baker was mistaken in the locality of the Trevenio survey, and had pointed out for it lands in part not upon it.

Judgment was rendered for Baker, and Watson has appealed.

*H. McKay,* for appellant, cited Roberts v. Lovejoy, 60 Texas, 257; Mitchell v. Zimmerman, 4 Texas, 75; Haldeman v. Chambers, 19 Texas, 2; Henderson v. Railway Company, 17 Texas, 576; Pendarvis v. Gray, 41 Texas, 328; Johnson v. Granger, 51 Texas, 44; Crutchfield v. Donathon, 49 Texas, 692; Pomeroy Contracts, Specific Performance, sections 215, 217, 298, 300.

*W. H. Baldwin* and *E. P. Perkins,* for appellee. The letters and telegrams in evidence, followed by the change of possession, evidenced a valid contract. (1 Posey's Unrep. Texas Cases, p. 346; Pomeroy Con., Spec. Perf., p. 129, sec. 90, note 2; 8 Myer's Fed. Dec., sec. 430; 1 S. W. R., pp. 185–6, and note at end of case; Pom. Con., Spec. Perf., p. 143, sec. 101; Id., p. 145, note 1; Wood on Frauds, sec. 482, latter part; Id., sec. 488 and 490.)

2. To enable a party to rescind a contract on account of fraud discovered, he must rescind as soon as such discovery is made, or as soon thereafter as circumstances will admit, and he must not go on with the contract. (Myer's Fed. Dec., secs. 1199, 1579, 1582, 1618; Dawson v. Sparks, 1 Posey's Unrep. Texas

Cases, 736; 5 Wait's Act. and Def., p. 813, sec. 4; Kerr Frauds. and Mis., 334, 335, 336, 339, 408; 3 Wait's Act. and Def., p. 439, sec. 8; Id., p. 445, sec. 12; 2 Pom. Eq., 856, 878; 20 Fed. Rep., 376.)

3. A contract, made as a sole contract, must stand or fall together, and cannot be rescinded in part and affirmed in part. (Story on Con., 497a, and note, and 977; Kerr Fraud and Mistake, 336.)

4. When a misrepresentation does not extend to the entire scope of the agreement, or to any of its most important parts, but is merely in some incidental, subordinate, or collateral matter, it is a subject of compensation, if innocently made. (Pom. Eq., vol. 2, secs. 889–891, 899; Chit. Con., 741; Story's Eq., 141, 150–1; 2 Par. Con., 769–71; Waterman's Spec. Perf. Con., 303–4.)

Walker, Associate Justice. This is an appeal from a judgment for the purchase money of certain lands, and foreclosing the vendor's lien upon them.

The main questions raised are (1), was the contract for the sale of the lands shown, and (2), whether the facts justified the enforcement of the contract of specific performance, or did Watson, the vendee, establish his defense of fraud or mutual mistake affecting any material part of the contract, if a contract existed.

The letter of November ————, 1884, from Baker to Watson describes the land as "situated six miles northwest from Mount Vernon, Texas, * * * consisting of two thousand five hundred acres of land," and further " * * my farm is situated on the south side of White Oak creek, one mile from the bottom." The telegrams in evidence between the parties show the price agreed upon.

In the eighth assignment of error, complaint is that the court refused to withdraw from the jury the letters and telegrams which had all been read in evidence without objection. The reason urged for withdrawing them is that they do not show a contract in writing sufficient to take it out of the statute of frauds.

It is well established, that "the written evidence required by the statute need not be comprised in a single document or drawn up in any particular form. It is sufficient if the contract can be plainly made out in all its terms from any writings of the party or from his correspondence." (19 Texas, 74, Peters v. Philips.)

The memorandum or agreement required by the statute "need not be signed by both parties, but only by him who is to be charged by it." (49 Texas, 695, Crutchfield v. Donathon.)

In Fulton v. Robinson, 55 Texas, 404, the general rule as to the requisites of the agreement or memorandum in writing, under the statute of frauds, is stated that it should be so reasonably definite and certain within itself or other writing referred to as to parties, consideration and subject matter that specific performance can be enforced without a resort to parol testimony." In that case a receipt "in part payment of a certain tract of land, being my headright lying on Rusk creek in the Cross Timbers," was held sufficiently definite.

In 19 Texas, 74, is cited from 1 McCord, 425 (not accessible to us), "A receipt stating that the vendor had received of the vendee a certain sum, being on account of a plantation on the Cypress, sold to him this day for two thousand two hundred dollars,   *   *   was held sufficient compliance with the statute."

In Colerick v. Hooper, 3 Indiana, 318, specific performance was decreed upon the following agreement:

"I have this day sold my lot to Alexis Coquilard, on the plat in the town of South Bend, on the plat of said town, on the river bank.

(Signed)          "D. H. COLERICK."
"Aug. 11, 1835."

In discussion the court argues "this memorandum   *   *   describes the property sold, not with the utmost certainty, it is true, but so that it could be identified, and parol evidence for that purpose would be admissible. Such evidence would not be required to make out the terms of the agreement, but to apply it to the subject matter of it.

"The thing sold was Colerick's lot on the river bank in the town of South Bend. The written contract assumed that he had one lot on the river bank in said town, and implied that he had but one. Which was it was the only question to be settled. This can be easily answered from the data given."

Of examples of descriptions, so imperfect that identity is impossible, we have in Johnson v. Granger, 51 Texas, 42, "Received of Cone Johnson three hundred dollars on town lots." In 46 Indiana, 433: "Six hundred and forty acres of

land in Anderson county, Kansas." In 52 Indiana, 127: "One hundred and twenty acres of land in Shannon county, Missouri."

These cases may illustrate the rule applied to the memorandum in writing under the statute as to certainty required as to the land sold. It is clearly stated in Brown on Statute of Frauds, sec. 385: "It must appear from the memorandum what is the subject matter of the defendant's engagement. Land, for instance, which is purported to be bargained for must be so described that it may be identified." And in sec. 90, Pomeroy's Com. on Specific Performance: "The subject matter must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the condition of the parties at and immediately before the making of the contract." (See also Lewis v. Reichey, 27 N. J. Eq. Rep., 240; Glenn v. Rogers, 3 Md., 316; Waring v. Ayers, 40 N. Y., 357; Pom. Com., sec. 90 and note.)

As in all other contracts in writing, parol testimony can not add to their terms, yet it can show the circumstances. It can not make the contract for sale of land, but can apply a description to the property, if such application can be made so that it be known that the particular object is found. Parol evidence can not add to an imperfect contract a material part in order to sustain it, but it can apply a description in it to the subject.

Applying these suggestions to the letters and telegrams in evidence, there can be no doubt as to the fact that Baker's farm on which he resided, with the external description as to buildings and to farm and pasture lands enclosed, and its locality with reference to Mt. Vernon and the creek named, was the property for which Watson made the offer and which was accepted at a price agreed upon.

Whether within the description is included the detached six hundred and twenty-nine acres—the Trevenio survey—is more difficult. The lands described in Baker's letter are said to lie in a body. That the lands pointed out to Watson by Baker were in contemplation of the parties, and which was supposed to have been included in Trevenio survey, is equally clear to have been in Baker's mind and also in Watson's when he made his offer, which was finally accepted. But this does not appear in the writings relied upon as the contract. Nor will the difficulty be removed by resorting to a parol executed contract, for

while such may be inferred from the testimony, yet as to the Trevenio tract there was no possession given by Baker and taken by Watson, either actual or constructive. Watson's possession was of the farm, and without occupation in any way of the Trevenio tract.

Watson's letter of December 19, 1884, addressed to Baker, speaking of "your property," referring doubtless to what he had been shown as Baker's lands, etc., offering ten thousand dollars, may have been intended as applying to the lands he had inspected, and if so, with knowledge of the general locality of the detached part, only that his information was that the tracts cornered together. But we can not reach this conclusion from the words "your property;" and we can not from them impart the two tracts into the written memorandum. We conclude that there was a sufficient memorandum to apply to the main farm tract, but not to the other detached from it.

Watson's subsequent conduct places him at a disadvantage. It is in evidence that as early as February 7, 1885, he knew that the Trevenio survey was part of his contract. It is included in the unsigned notes for the purchase money prepared at his instance after he had resided on the land a month. It is natural that, having bought a piece of ground, like the old time farmer, "he must needs go and see it." His own testimony is that he discovered the true locality of this survey about the first of May, 1885, and that soon thereafter he offered to rescind and brought suit. His suit, however, was not brought until August 10, 1885, and Baker testifies that he was first notified of the trouble by the suit. If Watson, on discovering the disconnection of the tracts, had exercised his right to rescind, he should have left the land and property, and should have made demand for his advance upon the trade. By so doing he could have occupied the advantage ground of prompt action. A tender in an offer to rescind should be kept up. He should restore the property. This would not be excused by suit. Upon rescinding, the property would be Baker's, and Watson had no right to dispose of it.

Having elected to dispose of it even after suit, he is in the attitude of claiming the right to dispose of the personal property under the contract. He can not claim under it and against it.

He would not, however, be precluded from damages, if any, suffered by reason of the mistake, in a deduction from the price.

So far as Watson was concerned, it was of no consequence whether the misrepresentation was wilful or innocently made by Baker. The damage was the same, and his rights were the same as to a recovery of the loss sustained.

While we are satisfied that the contract was sufficiently shown in the letters and telegrams in evidence, and that the court acted properly in overruling the motion of defendant to exclude them from the jury, we are not fully satisfied but that Watson may have suffered in his contest resisting complete specific performance. In the charge to the jury, while containing substantially the law applicable to the testimony, a distinction between false representation and innocent mistake on Baker's part seems to have been recognized. An instruction was asked by Watson, for the purpose of removing this distinction, and it should have been given, or a like charge, informing the jury of the effect of mutual mistake upon question of rescission and upon question of damages if rescission should be refused, and any damages be proven as resulting from such mistake. The charge is as follows: "That if the representations made by Baker concerning the sale of the property in controversy were untrue, but were made by Baker believing them to be true and that Watson acted on said representations and believed them to be true, and that the representations were a material inducement to the trade, and that Baker had better means of informing himself of the facts than Watson, then he, defendant, would be entitled to have the trade rescinded, although there was no positive fraud on Baker's part, if the other circumstances of the case entitled him to a recission."

The record shows clearly a mutual mistake in the locality of the Trevenio survey. It can not be brought into the terms of the contract in writing, nor into an executed parol contract between the parties; although it was in the mind of both parties in February, when the papers were prepared, but which were not signed.

Watson having elected to remain in possession and to dispose of the personal property, will have great difficulty in acquitting himself of laches in acting upon the breach of the contract. Yet, he should have the right to an equitable abatement in the price, should the Trevenio survey be excluded from the contract; or in event of a material difference in the value of the entire estate by reason of the tracts being disconnected.

The purchase by Baker of the roadway connecting the lands did not remove the diffiulty. It could not alter the locality of the lands though a convenience, and it naturally would be taken into consideration upon the question of damages.

Another view of the main question may be taken, not distinctly made in the pleadings nor briefs of counsel. In 49 Texas, 696, it was held that a suit upon a promissory note given for land "was not an action brought upon a contract for the sale of land, but was upon a promissory note given for the purchase money for land." And that "although it may not be such a memorandum as satisfies the statute, the maker can not avoid the note which he has given because he has omitted to bind the vendor." The vendor tendered a deed on the trial, and judgment for the amount of the note and foreclosing the vendor's lien was affirmed.

In this case Watson by telegram did promise Baker to pay him the twelve thousand dollars. And after payment of the four thousand dollars he again promised to pay the eight thousand dollars for the land, which was assented to by Baker. It was not necessary that his promise to pay be in writing. (49 Texas, 2, Pitschki v. Anderson.) In consideration for these promises Watson received and retained possession of the farm and valuable stock upon it. He has used the farm and has disposed of all the personal property. Baker has tendered the deed, and it was relevant to the issues for the deed to be admitted in evidence, with evidence of the tender of it. Upon this view of the condition of the parties, it would seem that the relief for Watson would be a just abatement in the price by reason of the locality of the Trevenio survey, if there be such difference, and without reference to the good or bad faith of Baker in his representations in the matter. The action of the court upon the right to open and close, as shown in the bill of exceptions, was regular. Upon the issues litigated, the affirmative was on Baker. The contract was denied. He was put upon its proof. Watson was on the defensive. Besides the position of the parties as plaintiff and defendant seems to have been determined by the order of the court in consolidating the two suits. It was acquiesced in by the parties in their repleading with reference to the one suit.

The judgment below will be reversed for the defect in the charge of the court above noted and the refusal to give the charge asked to correct the defect. *Reversed and remanded.*

Opinion delivered November 13, 1888.