## BLACK v. HANZ.

(Court of Civil Appeals of Texas. Austin. March 6, 1912. Rehearing Denied April 10, 1912.)

1. HOMESTEAD (§ 32*)—INTENTION TO OCCUPY IN FUTURE.

Though when one exchanged his house for wild, unimproved land, he declared an intention to subsequently make it his home, and afterwards, while trying to sell it, stated that if he did not sell it he intended some time to live on it, yet, he having done nothing to improve it, and been prevented by various circumstances from moving on it, he could not claim it was a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 40–43; Dec. Dig. § 32.*]

2. FRAUDS, STATUTE OF (§ 118*)—SALE OF LAND—MEMORANDUM.

A letter sent by H. to B., stating, "Inclosed find deed of the land I bought from you," and asking that it be signed by B. and wife, and returned, and the inclosed deed, reciting that B. and wife, in consideration of a stated amount, conveyed to H. the described land, are suffi-

cient to take the oral contract out of the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 262–264; Dec. Dig. § 118.*]

3. FRAUDS, STATUTE OF (§ 115*)—SALE OF LAND—MEMORANDUM—SIGNING.

Under Rev. St. 1895, art. 2543, subd. 4, prohibiting action on a contract for sale of real estate, unless a written memorandum thereof be signed by the party to be charged therewith, specific performance being sought by the vendor, it is enough that the signing is by the vendee alone.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 242–250; Dec. Dig. § 115.*]

4. FRAUDS, STATUTE OF (§ 104*)—MEMORANDUM IN WRITING.

The memorandum in writing of a contract for the sale of land, required by the statute of frauds, may not only be shown by correspondence, but may be made subsequent to the agreement.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 209; Dec. Dig. § 104.*]

Error to District Court, Runnels County; John W. Goodwin, Judge.

Action by C. T. Hanz against W. C. Black. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Blanks, Collins & Jackson, of San Angelo, for plaintiff in error. John I. Guion and Smith & Wade, all of Ballinger, for defendant in error.

RICE, J. This suit was brought by defendant in error against plaintiff in error to enforce the collection of two certain notes, dated January 5 and March 19, 1910, respectively, amounting to $425, with interest and attorney's fees, and for the collection of $750, alleged to be due him for two well-drilling machines sold by him to plaintiff in error, and for foreclosure of an attachment lien on 200 acres of land situated in Reagan county, levied upon as the property of plaintiff in error.

By appropriate pleading, plaintiff in error alleged, first, that the land levied upon was the homestead of himself and family, and therefore not subject to forced sale; second, that during the year 1910, he made a parol sale of said land to defendant in error, whereby he agreed to convey the same to him in payment of $1,600 and the assumption on the part of defendant in error of the amount due from him to the state, as well as the payment of a $150 vendor's lien note outstanding against it. Said $1,600 was to be paid by the surrender to plaintiff in error of the two notes, above referred to, and the delivery to him of said two well-drilling machines at $750, and the balance of $425 to be paid in cash; that, in pursuance of said agreement, defendant in error delivered said machines to plaintiff in error, and it was understood between them that defendant in error would prepare a deed for the conveyance of said land, which should be forwarded, together with the cash payment and notes, to plain-

tiff in error for execution; that thereafter, on the 10th of May, 1910, defendant in error sent him by mail an unsigned deed, to be executed by himself and wife, wherein the 200 acres of land was to be conveyed to defendant in error for the recited cash consideration of $1,600, said deed being accompanied by a letter fully describing the land, and in every way disclosing the true contract between plaintiff and defendant, save and except that the consideration therein recited was incorrectly stated to be only $1,600, for which reason he declined to execute the same, averring that no part of said cash consideration has ever been paid him by defendant in error, nor have the notes been delivered to him; that, notwithstanding the fact that said land is the homestead of himself and family, and the only land owned by him, that he is now, and has been at all times, willing to carry out the contract as hereinbefore set out, praying for a specific performance thereof, or, in the alternative, if this cannot be granted, for damages against defendant in error.

Defendant in error, replying thereto, after denying the execution of any such contract as pleaded by plaintiff in error, sought to avoid the effect thereof by alleging that the same was not in writing; that it related to the sale and purchase of land, and was therefore within the statute of frauds, and no suit could be maintained thereon for its enforcement.

The case was tried before a jury, and the court instructed them that the only contested issue was as to the value of the well-drilling machines, directing them to return a verdict for plaintiff for the amount due on the two notes, and for the reasonable market value of said machines, with a foreclosure of the attachment lien on the land. A verdict was returned, and judgment entered in accordance therewith, from which this appeal is prosecuted.

[1] The second and third assignments complain of the failure of the court to submit for the consideration of the jury the issue as to whether or not the land in controversy was the homestead of plaintiff in error, and therefore not subject to foreclosure under the writ of attachment, and the refusal to give a special charge presenting said issue.

The evidence shows that some time in 1909, plaintiff in error, who was then living in Ballinger, where he owned a house and lot, exchanged the same for the land in controversy, declaring at that time an intention to subsequently make his home upon it. This was wild land, without any improvements whatever upon it, and inclosed in a large pasture, over which the plaintiff in error never at any time seems to have had any control. Nor was anything ever done by him toward improving it; and this was its condition at the time the attachment was levied

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

upon it. In the meantime, plaintiff in error had removed from Ballinger to Rowena, and subsequently to Sherwood and Merzton, in Irion county, where he was working at his trade as a carpenter. This land had been listed by him with real estate agents for sale; and he was endeavoring to sell it at the time it was levied upon. It was shown that he had stated that if he did not sell it he intended at some time to live upon it. He sought to excuse his delay in moving upon it by stating that at the time he traded for it he was engaged in work as a carpenter upon some buildings at Ballinger, and could not then leave, and later his horses died, and he was unable to go, and subsequent to this he did not leave on account of the fact that his children were in school.

We do not think this evidence was sufficient to justify the court in submitting the issue of homestead to the jury. See Wiseman v. Watters, 142 S. W. 134; West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; O'Brien v. Woltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Methery v. Walker, 17 Tex. 593; Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Stone v. Darnell, 20 Tex. 11; Barnes v. White, 53 Tex. 628; Churchwell v. Sweeney, 29 Tex. Civ. App. 166, 68 S. W. 185. In the case of West End Town Co. v. Grigg, supra, it was held that the mere intention of the owners to make certain property their homestead at some future time, if able to erect a residence upon it, without doing anything further, did not make the property a homestead.

In Wiseman v. Watters, supra, it was held, as shown by the syllabus, that, where the owners of land did not live upon it and rented it out, and there was no house thereon, a mere vague intention to make it a homestead in the future cannot render it such. For which reasons we overrule these assignments.

[2] On the trial, plaintiff in error offered in evidence the unsigned deed which defendant in error had mailed him, together with the letter accompanying it, which, upon objection, were excluded. This ruling forms the basis of the first assignment of error. The letter is as follows: "Mr. W. C. Black, Sherwood, Texas—Dear Sir: Enclosed find deed to the 200 acres that I bought from you, which sign and have signed by your wife. I suppose the release is in your possession, which kindly mail to me with the deed. Hoping to hear from you soon, I am, Yours very respectfully, [Signed] Carl Hanz."

The deed referred to therein was in the usual form, reciting that Black and wife, in consideration of $1,600, conveyed to Carl Hanz the land in controversy. Defendant in error objected to the admission of said letter and deed when offered, upon the ground that it was an attempt to show a contract for the sale of land, and was not such a memorandum as was required by the statute of frauds, which had been pleaded by him in answer to the defendant's plea for specific performance of the alleged contract of the sale of the land.

[3] We think this evidence was admissible, and that the court erred in excluding it. It is true that the contract between the parties for the sale of the land was verbal; but, at the same time, we think the letter and deed which were excluded, when construed together, are sufficient to take the contract out of the statute. It is likewise true, as urged by defendant in error, that no agreement or writing of any character was signed by the grantor; but this is not necessary. It appears to be the settled law of this state, and, indeed, it seems to be generally held, that if the writing be signed by the vendee, who is sought to be charged, it is sufficient. See Crutchfield v. Donathan, 49 Tex. 695, 30 Am. Rep. 112; Watson v. Baker, 71 Tex. 747, 9 S. W. 867; Tynan v. Dullnig, 25 S. W. 465; Dyer v. Winston, 33 Tex. Civ. App. 412, 77 S. W. 227; 20 Cyc. 272, note 2b; volume 3, Parsons on Contracts (9th Ed.) p. 9; Brown on Frauds, § 365. Our statute of frauds provides that no action shall be brought upon any contract for the sale of real estate or the lease thereof for a longer term than one year, unless the terms or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized. See R. S. art. 2543, subd. 4. The party sought to be charged in this instance was the vendee, the defendant in error; and he had prepared and forwarded the deed, together with the letter, which, we think, is a substantial compliance with and takes the contract out of the statute of frauds.

It is said in Crutchfield v. Donathan, supra, that "there can be no question that, according to the current of authority, the agreement or memorandum thereof required by the statute need not be signed by both the parties, but only by him who is to be charged by it," citing a long line of cases in support of the doctrine. Further quoting from Addison on Contracts, it is said: "If an agreement has been made by word of mouth for the purchase and sale of an estate, and the purchaser signs a memorandum by which he agrees to buy the property for a certain sum from the vendor, and the vendor is ready to establish his title, and is willing and offers to convey the property to the purchaser, the latter cannot escape from his agreement to buy by saying that the vendor has signed no memorandum of the contract, and was not himself liable upon it by reason of the statute. Volume 1, § 213." Continuing, the court says: "The objections to this construction of the statute, as stated by Lord Reedsdale, in Lawrence v. Butler, 1 Ch. & L. E. F. 13, are certainly forcible, and have lead some courts, and at least one recent author, to reject it as unreasonable,

notwithstanding the length of time it has been established by authority. Bing. on Sales of Real Property, p. 434 et seq.; Thomas, Executrix, v. Trustees of Harrodsburg, 3 Marsh. 1147; Frazer v. Ford, 2 Head [Tenn.] 464. But 70 years have passed since Chancellor Kent said that the 'weight of argument was in favor of the construction that the agreement concerning lands to be enforced in equity should be mutually binding,' but added, 'It appears from a review of the cases that the point is too well settled to be now questioned.'" The court holding that, "according to authority, if the instrument sued on were otherwise such a memorandum as the statute required, Donathan was entitled to sue upon it, although he himself had not signed it."

[4] Such a memorandum or writing as contemplated may be shown by correspondence. See Peters v. Phillips, 19 Tex. 74, 70 Am. Dec. 319; Watson v. Baker, supra; Patton v. Rucker, 29 Tex. 407; Railway Co. v. Gentry, 69 Tex. 630, 8 S. W. 98; Foster v. Land Co., 2 Tex. Civ. App. 505, 22 S. W. 260. And the memorandum may be made subsequent to the agreement. See Cyc. vol. 20, 257, 268i; Fulton v. Robinson, 55 Tex. 404; Ellett v. Britton, 10 Tex. 208; Thomas v. Hammond, 47 Tex. 42; Campbell v. Preece, 133 Ky. 572, 118 S. W. 373.

We might add in passing that, while we think the court erred in excluding this evidence, and that the same, together with the testimony on the part of plaintiff in error, authorized the submission of the issue made by his pleadings for the consideration of the jury, still, in view of another trial, it is suggested that the plea setting up these issues should be made more specific.

For the error indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.