SPIVEY et al. v. HOOKS. (No. 497.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 13, 1919.)

1. FRAUDS, STATUTE OF ⟨⟩129(8)—AMBIGUITY IN DESCRIPTION NO DEFENSE TO BREACH OF CONTRACT.

Where defendants entered into possession under a turpentine lease or contract, and began to cut trees, and part of the rental was paid, defendants cannot defeat an action for recovery of rental thereafter becoming due, on the ground that the contract or lease was void because of ambiguity in the description of the property.

2. APPEAL AND ERROR ⟨⟩994(3)—REVIEW OF FINDINGS ON EVIDENCE.

In action tried without jury, credibility of witnesses is for the court, who is not required to accept the version of interested parties, and whose determination on questions of credibility of witnesses will not be reviewed.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Action by J. L. Hooks against J. H. Spivey and another. Judgment for plaintiff, and defendants appeal. Affirmed.

---

Smith & Crawford, of Beaumont, for appellants.

Anderson & Masterson, of Beaumont, for appellee.

WALKER, J. In January, 1916, J. L. Hooks leased to Spivey and Brown, for a period of three years from said date, for the purpose of operating timber thereon for turpentine purposes, 250 acres approximately of T. B. and D. E. Spell survey and 100 acres out of the southeast corner of the Francesco Arriola league, in Hardin county, Tex. The rental under said lease was the sum of 10 cents per cup, payable one-third in cash, one-third in one year, and one-third in two years after date; the consideration for said lease being expressed in the contract as follows:

"In consideration of the premises, parties of the second part agree to cup the timber on the above-described land in time for the 1916 season, and to pay to the party of the first part as full rental under this lease the sum of ten cents per cup payable as follows: One-third of said rental in cash to the party of the first part as soon as said timber is cupped and the number of cups ascertained, and the balance in two equal annual payments, payable one and two years after the date the first payment comes due."

The land is described in the contract as follows:

"All that certain tract or parcel of land, lying and being situated in Hardin county, Texas, same being a part of the T. B. and D. E. Spell survey, and being all of that portion of said survey owned by party of the first part containing approximately 250 acres; also 100 acres out of S. E. corner of Francisco Arriola league, in Hardin county, Texas."

Spivey and Brown placed 7,352 cups on and before April 11, 1916. Thus under the contract, at 10 cents per cup, they promised to pay for this number of cups $735.20. After placing these cups, they sold their rights under the contract to Fenn and Prather, who assumed the obligations of said lease. On April 11, 1916, Fenn and Prather paid $245.07 to J. L. Hooks on said lease. On April 12, 1917, Fenn and Prather paid $245.07 to J. L. Hooks on said lease. They did not pay for the year 1918. In their brief appellants say:

"There is no dispute but that appellants breached the contract sued upon."

Upon trial in the county court without a jury, judgment was rendered for the plaintiff for $245.06, with interest from April 11, 1918, at the rate of 6 per cent. per annum. From this judgment appellants have appealed to this court.

Upon the execution of the contract appellants went upon the premises and turpentined the land for two years. Appellants' first assignment of error is that the court erred in admitting the contract in evidence, because said contract is void, in that the description of the property attempted to be conveyed is ambiguous, and said ambiguity is patent. Their second assignment of error is that the court erred in admitting the contract in evidence—

"because said contract is void on account of the fact that the description of the property attempted to be conveyed is ambiguous, and said ambiguity is patent, and, if said ambiguity is not patent, the same is latent, and no extraneous facts were offered in explanation of same."

[1] These assignments are not well taken. This is not a suit to recover real estate, but was brought by the appellees on the promise to pay made by appellants, being the consideration for their right to turpentine the land. Appellants went in possession of the land and worked the timber for two years. No question is made by them that they wrongfully breached the contract. As we construe these facts, this case comes within the rule announced in Crutchfield v. Donathon, 49 Tex. 691, 30 Am. Rep. 112, Cammack v. Prather, 74 S. W. 354, Watson v. Baker, 71 Tex. 751, 9 S. W. 867, Busby v. Bush, 79 Tex. 656, 15 S. W. 638, and Bowden v. Waggoner, 210 S. W. 605.

In Crutchfield v. Donathon, supra, Donathon brought suit on the following note:

"Jacksboro, May 3. 1873.

"Thirty days after date I promise to pay to J. W. Donathon, or bearer, $250, with 5 per cent. interest per month from date until paid. * * * The consideration of the above note is one-half of a certain town lot in the town of Jacksboro, lot No. 4 in block No. 3.

"[Signed] L. L. Crutchfield."

Justice Gould discusses the same proposition in that case involved in the assignment made by the appellants in this case. After an extensive review of the authorities, Justice Gould says:

"Our conclusion is that this action was not brought upon a contract for the sale of lands, but upon a promissory note given for the purchase money of land; that it was not shown by the evidence that the consideration of the note had failed; and that the plaintiff was entitled to his judgment on his note, and a foreclosure of the lien evidenced by the note."

The other authorities cited above amply sustain the distinction announced in Crutchfield v. Donathon.

[2] Appellants' third assignment of error is that the court erred in rendering judgment against the defendants for the amount sued for:

"Because the undisputed facts show that plaintiff was not damaged by the breach of the contract by defendants, for the reason that if defendants had not breached said contract, and had operated the timber for turpentine during

the year of 1918, all of said timber would have been killed, which said timber amounted to 7,000,000 feet, and its market value being .m the sum of $3,900, which amount exceeded the damages sued for."

W. G. Prather, one of the defendants, testified:

"We worked the timber under this lease for turpentine during the year 1916 and 1917, for which years we paid to Mr. Hooks the amount provided for by said lease. We did not work said timber during the year 1918, because the latter part of the year 1916 and all of the year 1917 was extremely dry. We had very little rainfall. * * * About the middle of the year 1917 the timber in question began to hard-face; that is, the face made upon the pine trees to take the turpentine from, said trees began to heal over and harden. This is an indication that the tree is not receiving enough moisture. * * * My experience, as well as all other turpentine men, has been that to continue to turpentine timber after it begins to hard-face, as above stated, will kill the timber. By the fall of 1917 at least one-third of all the timber on said land had hard-faced, and, had we worked this timber during the year 1918, our opinion is that it would have killed all of the timber on said land. I have been in the turpentine business for the past 20 years. I figure that to have worked said timber during the years 1918, that would have damaged Mr. Hooks much more than the amount due him for said year under said lease."

J. M. Brown, another defendant, testified substantially as did Mr. Prather. Both defendants further testified that during the year 1918 all other leases held by them near plaintiff's land had expired, and that it would not have been profitable for them to operate plaintiff's lease.

J. L. Hooks, plaintiff, testified as follows:

"There was found to be 7,352 cups. The amount due me as per said agreement, at 10 cents per cup, was $735.20. I received a check from Fenn & Prather on April 11, 1916, for the one-third payment for said turpentine privilege, amounting to the sum of $245.07, and on April 12, 1917, I received a check from Fenn & Prather for $245.07 to cover the second one-third payment. I have not received payment for the last one-third installment, which was due April 11, 1918, amounting to the sum of $245.06. The 350 acres of land covered by the agreement will cut 5,000 feet of pine timber per acre. This timber is estimated to be worth $5 per 1,000 feet, and was worth the same during the year 1918."

He further testified that he did not direct nor request appellants to cease operating this timber; that it would have been perfectly satisfactory to him for them to have operated it under the contract.

We doubt very much the correctness of this assignment as a legal proposition. However, it is not necessary for us to determine that question. On the issue of fact raised by this assignment, the defendants were interested parties, and the court was not required to accept their version of why they breached the contract. The court was the judge "of all the facts and circumstances in evidence, and the credibility of the witnesses," and, having found against appellants on the fact issue in-, volved in this assignment, we will not disturb his finding.

This case is in all things affirmed.