**THOMAS et al. v. REA et al.   (No. 9221.)**

Court of Civil Appeals of Texas.   Galveston.
Jan. 18, 1929.

Rehearing Denied Feb. 14, 1929.

J. B. Leigh, of Navasota, for appellants Fuqua and Baker.

S. W. Dean and Haynes Shannon, both of Navasota, for appellant Thomas.

T. P. Buffington, of Anderson, for appellee Rea.

GRAVES, J. By bill of interpleader, appellants Fuqua and Baker sued their coappellant B. C. Thomas and appellee C. F. Rea, alleging that they had, by separate but interdependent contracts with them,' each dated March 19, 1926, undertaken upon the terms therein stipulated to buy the gravel on 282 acres of land in Grimes county at the purchase price per cubic yard of 10 cents to Thomas and 5 cents to Rea, respectively; that they then owed the defendants, between them, the sum of $2,500 for gravel that was to be removed during the first year under the contracts—they themselves having already received that sum from Grimes county on a resale of the gravel to it at 25 cents per cubic yard—but could not safely pay the one without laying themselves liable to again pay the other, for the reason that Thomas claimed to own all of the gravel that had been or might be produced from the land, while Rea claimed to own a life estate of one-half thereof. They prayed that Thomas and Rea be required to assert their several rights in and titles to the gravel remaining in the land, as well as to the $2,500 in proceeds from the sales of it to that date, which sum they deposited in the registry of the court, asking also for discharge from further liability to either defendant, for attorney's fees, costs, etc.

Between the filing of the suit and the trial, Grimes county, which had in the meantime completed its contract with the plaintiffs, paid into the registry of the court $3,308.25, which sum represented the purchase price at 25 cents per cubic yard of all the gravel it had so bought from them, over and above that represented by the $2,500 deposited by the plaintiffs themselves, making $5,808.25 for slightly under a total of 25,000 yards removed.

The defendant C. F. Rea answered by general demurrer, general denial, and, by way of cross-action against the plaintiffs, alleged a breach of their contract with him and a conversion of his property by plaintiffs and Grimes county, praying that the county be made a party, and for judgment against Thomas for the title to one-half of the gravel in controversy, and against the plaintiffs and Grimes county for one-half of the gravel removed at a value of 25 cents per cubic yard.

Thomas answered by general and special exceptions, general denial, and, by way of cross-action, alleged breach of his contract with them by plaintiffs, pleaded estoppel as against the defendant C. F. Rea, and prayed judgment against plaintiffs and Grimes county for the total gravel removed at a price of 25 cents per cubic yard.

Grimes county answered, alleging deposit of the purchase price of all of the gravel in controversy used by it in the registry of the court in this cause, and thereupon, by agreement of all parties, the suit was dismissed as to the county.

The case was tried before the court, and, all exceptions of all parties being overruled, judgment was rendered in favor of the defendant Thomas against the plaintiffs for the sum of $2,500, in favor of the defendant C. F. Rea against the plaintiffs for the sum of $1,250, in favor of the defendant C. F. Rea against the defendant B. C. Thomas for the title to an undivided one-half interest in all of the clay and gravel on the land for and during the life of Rea, and in favor of plaintiffs for the balance remaining out of such sum of $5,808.25, after payment of the allowances in favor of the defendants above set out, the balance so remaining being the sum of $2,052.25, all costs being adjusted against defendants Thomas and Rea, each to

pay one-half, except Rea was to pay all those incident to bringing Grimes county in.

All parties excepted, appellants protesting against so much of the judgment as awarded any recovery against them in excess of the $2,500 they paid into court, Thomas at the court's refusal to hold him the owner of all the gravel as against Rea, and entitled to his full contract price therefor against appellants, and Rea over the court's failure to adjudge him entitled, in addition to the half interest in the gravel and the $1,250 in money given him, to one-half the excess over that sum that had been awarded Thomas, as well as to all costs as against Thomas.

We sustain the contention of appellants, so much of appellee Rea's as affects the costs, and recast the disposition made below accordingly; that is, judgment is here rendered reducing the total liability of appellants Fuqua and Baker to the $2,500 they so deposited, vesting in them the balance of the whole sum in court, dividing the $2,500 of it equally between their coappellant Thomas and appellee Rea, and requiring that Thomas pay all costs; the trial court's judgment in other respects remaining undisturbed.

These conclusions rest, in the main, upon considerations that may under the evidence be outlined in this way: Thomas at all times asserted to Fuqua and Baker that he owned the fee-simple title to the entire 282 acres, and in consequence all the gravel within it; upon that representation, coupled with a further one that they did not need an abstract, in January preceding the formal contract of purchase between them of March 19, 1926, appellants procured from him an option to buy all the sand, clay, and gravel on the land at an agreed price of 10 cents per cubic yard, and began prospecting operations on it; thereupon Rea notified them that he claimed a life estate in one-half of all such gravel and clay; appellants then obtained and had abstracts of title to the land examined by their attorney, who reported that Rea did in fact own the life estate he claimed; thereafter, on or about March 17, 1926, but prior to entering into the contract of that date with him, appellants by appointment met Thomas and his attorney in the latter's office and advised the two of Rea's claim and of their own attorney's opinion that it was valid; in such conference Thomas and his attorney both assured appellants that Rea in fact had no title to the gravel, the attorney telling them that their attorney had fallen into error in so concluding to the contrary on account of the fact that an instrument in the abstract he examined had been put in the wrong place, which he had accordingly no doubt overlooked, and that he himself would write a letter to appellants' attorney calling his attention to such fact, and that it would not only settle Rea's claim but show Thomas to be the sole owner of the gravel involved; induced by these assurances and representations, relying upon them, and believing as the effect thereof that Rea really had no interest, appellants then and there made the contract with Thomas of March 17, 1926, whereby they agreed to buy the gravel from Thomas as the sole owner for 10 cents per cubic yard; but Banquo's ghost would not down, and Rea's claim promptly thereafter bobbed up again, appellant's attorney on its recurrence repeating his conclusion to them that it was sound; they then, on April 28, 1926, dating the agreement back, however, to the same date as the one with Thomas March 17, 1926, made a written contract with Rea, which recited that he claimed to own a life estate in one-half the gravel on the land, and that they would pay him therefor 5 cents per cubic yard—half the price to Thomas for the whole interest—"upon the following terms and conditions: All moneys for the same to be deposited in the Farmers State Bank of Shiro, Texas, until such time as the said Rea shall settle with B. C. Thomas as to which of them owns said one-half (½) interest herein described."

The learned trial court correctly held, under the undisputed evidence, that appellee Rea did in fact own the life estate in one-half the clay and gravel he had thus all along contended for; hence there was nothing else to do than grant him the recovery awarded him on that basis. This should have carried with it also, however, a judgment against Thomas for his costs, since the latter by his dispute of Rea's title caused him without justification to lose the costs to appellants Fuqua and Baker. The facts showing Rea's title were, in brief substance, these: On January 23, 1920, E. A. Edwards conveyed the 282 acres of land to appellee C. F. Rea; Rea on the same day and as a part of the same transaction, though by separate instrument, conveying back to Edwards a one-half interest for life in the gravel and clay on the land, both transfers having gone to record within a few days after that date. On July 8, 1920, Rea conveyed the land back to Edwards, taking for the deferred purchase money certain vendor's lien notes secured by vendor's lien thereon; the deed having been filed for record July 9, 1920. On the same day, July 8, 1920, Edwards made a written contract with Rea, which, however, was not recorded, whereby Rea, as a part of the transaction represented by this contemporaneous reconveyance of the land to Edwards, reserved an interest for life in one-half the gravel and clay on the land. These instruments were then followed, on July 16, 1920, by a formal conveyance from Edwards to Rea of a life estate of one-half interest in the gravel and clay on the land, which went to record on July 30, 1920, the uncontroverted testimony showing that the two instruments of July 8 and 16 of 1920, respectively, were but parts of one and the same transaction.

In this state of the record title to the land, coappellant B. C. Thomas, on August 8, 1922, took a transfer from appellee Rea of the vendor's lien notes Rea had so received from Edwards, which was filed for record November 17, 1922, knowing both actually and constructively before he purchased of these instruments and transactions between Edwards and Rea through which the latter had retained his claimed one-half interest in the clay and gravel, admitting in this trial that both of them had then told him about it. Shortly over two years later, on November 3, 1924, Edwards conveyed the land to Thomas in cancellation of these vendor's lien notes; the title that went to him being such only as thus went to him through these last-mentioned two transfers.

In these circumstances, appellee Rea never held any lien on the life estate in half the gravel and clay on the land pursuant to the vendor's lien notes from Edwards, because, superior to and back of such lien, he had segregated and reserved that interest in the land from the sale the notes stood for, and Thomas, knowing both that fact and of the existence of the papers reflecting it when he first came to purchase the notes and afterwards the Edwards title in satisfaction of them, took with notice of this reservation of interest in Rea and of the fact that neither the lien securing his notes nor the subsequent conveyance from Edwards could attach to or affect it. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

■ Under the facts stated, it is wholly immaterial to any right of Thomas' that this life interest in the gravel was not reserved in and spread upon the records along with the very instrument whereby Rea reconveyed the land to Edwards in consideration of the notes, since before he bought he knew it had in fact been a part of that transaction and had long been so shown of record.

■ Neither was Thomas in any position under his contract with them to claim or recover from appellants Fuqua and Baker more than the stipulated 10 cents per cubic yard on one-half of the total gravel so shown to have been removed, because he had induced them to enter into it on faith of his assurance that he was the sole owner, whereas the proof showed him to have been mistaken and to have in fact owned only the half thereof; he was therefore estopped to demand payment for a greater interest than he had. Pomeroy on Equity, § 847; O'Connell v. Duke, 29 Tex. 299, 94 Am. Dec. 282; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Altgelt v. Gerbic (Tex. Civ. App.) 149 S. W. 233.

We find no lack of evidence supporting the court's finding of fact that appellants Fuqua and Baker did not breach their contracts with either their coappellant Thomas or the appellee Rea; furthermore, by virtue of their terms and the cited circumstances under which they were entered into, these undertakings were interdependent, and it would have been inequitable and unjust to require Fuqua and Baker to pay twice for the one thing they had bought thereunder. This court's judgment will enter, as above specified.

Affirmed in part; reversed and rendered in part.