CROSSLAND v. HART. (No. 708.)

(Court of Civil Appeals of Texas. Beaumont. July 15, 1921. Rehearing Denied Nov. 9, 1921.)

1. Appeal and error ⬩926(8)—Presumed to aid deposition that it was properly certified.

Bill of exceptions, complaining that court admitted deposition not certified to by a notary, which stated merely that deposition was objected to on the ground that there was no proper certificate of the notary, and which failed to show that the deposition did not in fact bear a proper certificate of the notary, *held* insufficient to show error, since it will be presumed, in the absence of a showing to the contrary, that the deposition was properly certified.

2. Appeal and error ⬩683—Injury by admission of deposition not shown, in absence of evidence contained therein.

Bill of exceptions, complaining of the admission of deposition without notary's certificate, *held* not reversible error, in that it did not show the testimony contained in the deposition, and therefore failed to show that appellant was prejudiced by the admission of the deposition.

3. Specific performance ⬩120 — Purchaser's testimony held admissible to show readiness to perform his part of contract.

In purchaser's action for specific performance, testimony that purchaser went to vendor's residence with deed to be executed by vendor and with money to make cash payment and note to be given vendor for balance of purchase money, but that vendor was not home, *held* admissible to show the readiness of purchaser to carry out his part of the contract.

4. Appeal and error ⬩1050(2)—Admission of immaterial testimony held harmless.

In purchaser's suit for specific performance, admission of purchaser's testimony that members of vendor's family had told him, after he had gone to vendor's residence to make payment and receive deed under the contract, that vendor had gone away on business and was not expected back until later in the night, *held* so immaterial as to be harmless.

5. Specific performance ⬩130 — Vendor in specific performance held entitled to amount expended after commencement of negotiations, without pleading right thereto.

Vendor, entitled under the contract to amount expended upon the land after negotiations had commenced, may recover such amount in purchaser's action for specific performance of contract, though right thereto is not specifically pleaded.

6. Specific performance ⬩130—Interest on price properly offset by benefit vendor derived from wrongful possession of land after his breach of contract.

Where vendor refused to perform contract and wrongfully remained in possession, the court, in awarding purchaser specific performance, properly denied vendor interest on the purchase money; such interest being offset by whatever benefit vendor derived from possession of the land.

7. Specific performance ⬩131—Decree of specific performance in effect denied recovery on alternative plea for damages for breach of contract.

Where purchaser sued for specific performance, and in the alternative for damages for breach of the contract, the court, by decreeing specific performance, in effect denied recovery of damages.

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Appeal and error ⬥1052(5)—Admission of testimony harmless in view of judgment.**

In purchaser's suit for specific performance, and in the alternative for damages for breach of contract, the admission of testimony immaterial to issue of damages for the breach of contract, if error, was harmless, where the judgment decreed specific performance.

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Suit by Max W. Hart against T. S. Crossland. Judgment for plaintiff, and defendant appeals. Affirmed as reformed.

S. M. Adams and F. P. Marshall, both of Nacogdoches, for appellant.

S. W. Blount and V. E. Middlebrooke, both of Nacogdoches, for appellee.

HIGHTOWER, C. J. The appellee, Hart, was the plaintiff below, and filed this suit in the district court of Nacogdoches county against appellant, Crossland, praying specific performance of a written contract, by the terms of which appellant agreed to sell and convey to appellee three certain tracts of land in Nacogdoches county for a consideration of $5,145, $1,000 of which was to be paid in cash upon the execution of a deed by appellant to appellee conveying the land, and the balance was to be evidenced by a vendor's lien note to be paid in six equal annual installments, with provision that the vendor's lien was to be reserved in the deed and note to secure the payment of such purchase money. In addition, the written contract between the parties provided, expressly, that appellee should also pay to appellant the amount of $85.32 in cash for certain improvements that appellant had placed upon the land since the negotiation for the sale and purchase had commenced. In the alternative, appellee prayed that in the event specific performance of the written contract should not be allowed, then that he have judgment for damages against appellant for breach of the contract, alleging in that connection that the land, at the time of the breach, was worth $10 per acre more than he had contracted to pay for same. Appellant answered by general and special exceptions, the ruling on which is not involved here, and by general denial, and also specially answered that the written contract set up in appellee's petition had been procured by fraud on his part, stating in proper detail the facts upon which such fraud was claimed, and further specially alleged, also, that appellee, himself, had failed to comply with the contract, and that therefore appellant was not bound thereby, etc.

The main issue of fact to be determined in the case was whether the written contract, specific performance of which was sought, had been procured by fraud on the part of appellee, and this issue was determined against appellant, and in appellee's favor, by a jury, and no attack is here made upon the jury's verdict on that issue. The trial resulted in a judgment in favor of appellee for specific performance of the contract, as prayed, and from that judgment appellant has prosecuted this appeal.

[1, 2] Appellant's first assignment of error complains of the action of the trial court in overruling his motion to quash the depositions of one W. A. Jumper, it being alleged in the motion that the notary taking the deposition did not certify to same, as required by law. The bill of exceptions to the action of the court in this connection, as contained in the transcript, fails to show, as a fact, that this deposition did not bear a proper certificate of the notary who took the same. The deposition is not attached to the bill of exceptions, nor does the trial court, in approving the bill, certify as a fact that there was no proper certificate by the notary to the deposition. It was incumbent upon appellant to show, affirmatively, by his bill in this connection, that there was no proper certificate of the notary to this deposition. The fact that the bill shows that the deposition was objected to on the ground that it did not bear a proper certificate of the notary is not equivalent to a statement by the trial court that such was true. In the absence of such a showing by the bill of exceptions, we will presume that the action of the court was correct. But even if the bill had shown affirmatively that there was no proper certificate of the officer to the deposition, still it would fail to show any injury to appellant, because the bill does not show a word of the testimony that was in the deposition, and therefore does not show that anything that was contained in the deposition was to the disadvantage or prejudice, in any way of appellant, and no reference is contained in the bill or statement under the assignment anywhere as to where the deposition may be found in the record. We, therefore, overrule the assignment.

The second assignment of error is as follows:

"The court erred in allowing plaintiff while on the stand to testify, over the defendant's objection, as follows: 'You say you went to Mr. Crossland's house on the night of February 18, 1919? Tell the jury what happened.' 'Yes; Mr. Crossland left Nacogdoches in the afternoon, and declined to make a deed before he left town. After he left I went and had a deed prepared from Crossland to myself for this particular land, according to the contract, and had the notes drawn up; got a notary public; got in the car and went out to Mr. Crossland's house about dark. Carried the money, that is, check for money, and asked Mrs. Crossland where Mr. Crossland was, and

she said he had gone over to Caro, around by North Church, in his car, and would be gone until 12 o'clock. We tried to leave the deed, the note signed by myself and the check for money, and told Mrs. Crossland to have Mr. Crossland to telephone the bank to see if the check was good. Mrs. Crossland started in the house with them, and I believe she got nearly to the door, probably inside the door, and brought them back, and said she didn't care to have anything to do with it, and Mrs. Crossland wouldn't let me leave the check and papers there, and we said we had to come back to town. I told Mrs. Crossland Mr. Crossland could sign the deed when he came into town, and I would leave the notes and money with her. Mr. Crossland's family told me he had gone over to the particular farm in question, and had come around by North Church, and was going around by Caro, and would be gone until 12 o'clock. They said he was in his car. We left Mr. Crossland's house and came around by Caro when Mrs. Crossland told us that she refused to accept the check and notes. I went up to Caro over to this place in and around by the Bogue, but couldn't stir Mr. Crossland up. He wasn't 'there.' "

Appellant objected to the above testimony on the ground that it was hearsay, and because it was not shown that he knew that appellee would be at his home that night, and also because appellant's visit to his home on that night was after business hours, and, further, that by admitting such evidence, there was placed before the jury the actions and declarations of appellee in appellant's absence.

A few words of explanation on this point will be necessary before disposing of this assignment. The written contract between the parties for the sale and purchase of the land provided that the 18th day of February, 1919, should be the last day on which appellee would have the right to comply with the terms of the contract by making the cash payment and executing the notes called for in the contract. On the morning of that day, appellant, Crossland, who lived in the country some distance from the town of Nacogdoches, went to Nacogdoches, as he testified, for the purpose of consummating this contract on his part, but that the party to whom the land was to be sold, as he claimed the contract to be, was not in the town of Nacogdoches on that morning, and therefore the contract was not carried out and consummated, and that, after staying in the town of Nacogdoches until about 3:30 p. m. on that day, he went home, believing that the party who was to buy the land, who was a person other than the appellee, according to the view of appellant, had abandoned his purpose to take the land, and that the contract was at an end. He further testified that after getting home, he went over to a neighbor's, some distance away, for the purpose of attending to a business matter, and that when appellee came to his house on the night in question, he (appellant) was not at home, and that when he left home that night to go to his neighbor's house he did not know that appellee intended to come to his house that night. But he further testified, in the same connection, that even if he had been there when the appellee came, he would not have made the deed as desired by appellee. The appellee testified that when appellant came to Nacogdoches on the morning of February 18th, appellee met him and thought that he had come to town for the purpose of consummating the contract for the sale and purchase of the land, but that, after talking to appellant a while, appellant told appellee that he would not carry out the contract, and would not sell him the land at all, had changed his mind about the matter, and that he declined to further discuss the contract. Appellee further testified that appellant left town without having consummated the contract by making him a deed, and that just about dark on the same evening, he, in company with a notary, went to appellant's residence in the country, carrying with him a deed for the land, to be executed by appellant, and also the note which evidenced the balance of the purchase money and the cash payment of $1,000; that his purpose in going to appellant's residence that night was to insist upon the performance by appellant of his contract and to leave no excuse on the part of appellant to avoid its performance.

[3, 4] The able and energetic counsel for appellant strenuously contends that the evidence objected to was inadmissible for any purpose in this case, but we have reached the conclusion that the testimony was admissible, as showing persistence and readiness on the part of appellee to carry out and perform his part of the contract. We fail to see anything in the evidence objected to, as shown above, that could be said to be hearsay, and therefore inadmissible. There was nothing in the testimony objected to that was said by appellee to any of appellant's family or by any of appellant's family to the appellee that we consider to be in the nature of hearsay, unless it be the statement of the members of the family that appellant had gone to Caro on business and was not expected back until later on in the night. If this was hearsay, it was so immaterial that it could not prejudice the rights of appellant in any way. Several members of appellant's family were placed upon the witness stand, and each of them testified, substantially, that appellee and the notary did come to appellant's house on the night in question, and that appellant was not at home at the time, and that he had left home about 5 or 6 o'clock, and that he came back some time that night, while the family were in bed. Mrs. Crossland, appellant's wife, testified, substantially, that appellee and the

notary came out to appellant's house on the night in question, and that at the time appellant was not there, and had gone on a business mission over to a neighbor's, and she testified, substantially, that appellant did not know that appellee would be there on that night. We see nothing in this evidence, even if it was not admissible, that could be so highly prejudicial as to require a reversal of the judgment in this case. There are several authorities cited in support of the contention under this assignment, the first being Camden Fire Insurance Co. v. Puett, 64 S. W. 418. We have tried to find the authority cited, but there is no such case in the volume of the Southwestern Reporter referred to. Also Traveler's Protective Ass'n v. Roth, cited as being in 126 S. W. 1172. We find no such case as cited. The other cases cited in the brief we have examined, but we fail to see that they sustain the contention here made by appellant.

[5] The third assignment of error we sustain. It was expressly provided in the written contract between the parties that, in addition to the cash payment and the notes that were to be executed by appellee, as consideration for the land, he was to also pay to appellant the amount of $85.32, which had been expended by appellant upon the land after negotiations for its sale and purchase had commenced. The trial court, by the judgment entered in this case, did not allow this $85.32 in favor of appellant, and on motion for new trial this failure on the part of the trial judge was specifically called to his attention, but he declined to correct the judgment in this respect. It is clear that appellant was entitled to this $85.32, in addition to the amount allowed him by the court's judgment, which had declared specific performance of the contract, and the trial court should have so decreed, and it was not necessary that there should have been any pleading on the part of appellant in that connection. Burleson v. Burleson, 15 Tex. 423; Hickman v. Withers, 83 Tex. 575, 19 S. W. 138. The judgment of the trial court will therefore be reformed to the extent of compelling appellee to pay to appellant this additional $85.32, as part of the purchase money for said land, and in that connection it is further ordered and decreed by this court that appellant shall have a vendor's lien upon the land in controversy to secure the payment of said sum of $85.32, the same as was awarded by the judgment as to the balance of the deferred payments represented by the note provided for in the judgment.

[6] The fourth assignment of error is overruled. The trial was had and judgment rendered in this case on October 22, 1920.

234 S.W.—36

The judgment provided that the notes evidencing the balance of the purchase money should bear interest at the rate of 8 per cent. per annum from the date of the judgment, which was also the date of the execution of the notes, and declined to allow interest on the balance of the purchase money from the 18th day of February, 1919, at which time the contract was to be performed and consummated. The trial court was correct in this. It was undisputed that appellant had remained in possession of the land, and the jury, in effect, found that he had wrongfully breached his contract, and the interest on this purchase money, in equity, should be offset by whatever benefit appellant derived from his possession of the land. We think the principle of our holding on this point was announced in Roberts v. Lovejoy, 28 Tex. 641; McElyea v. Faires, 79 Tex. 243, 14 S. W. 1059. We also refer to Lovejoy v. Roberts, 35 Tex. 613; Nevins v. Thomas, 80 Tex. 596, 16 S. W. 332; Kerr County v. Kitchens, 47 S. W. 551.

[7] The fifth assignment of error is overruled. The prayer for judgment for damages for breach of the contract was only in the alternative. In fact, the plea of the appellee in that connection was only in the alternative, and, the court having decreed specific performance, the legal effect of the decree was to deny any recovery on the alternative plea for damages.

The sixth assignment presents substantially and practically the same question as the second, and for the same reason it is overruled.

[8] The seventh assignment of error could only be material and relevant if the judgment in this case had been one for damages for breach of the contract, rather than for specific performance. If the testimony objected to, as shown by this assignment, was inadmissible, it is clear to us that it had no prejudicial effect, the judgment having been one for specific performance.

The eighth assignment raises practically the same question as the seventh, and is overruled for the same reason.

Finding no reversible error, and having reformed the judgment by allowing a recovery in favor of appellant for the additional amount of $85.32, the judgment of the trial court, as so reformed, will be affirmed. But it having been timely pointed out in the trial court that the judgment should have been corrected to the extent of allowing appellant the additional amount of $85.32, to which he was entitled under the written contract, and this request having been refused by the trial court, it is ordered that all costs of this appeal be adjudged against the appellee.