## BLAFFER v. POWERS.
### No. 11501.

Court of Civil Appeals of Texas. Galveston.
Feb. 4, 1943.

Rehearing Denied March 25, 1943.

Cleaves & Cleaves and Lawler, Wood & Childress, all of Houston (Virgil Childress, of Houston, of counsel), for appellant.

F. L. Andrews, Richard Burns, and Andrews, Kelley, Kurth & Campbell, all of Houston (Richard Burns, of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This action was brought by appellee, C. S. Powers, for specific performance of a written contract with appellant, John H. Blaffer, for the purchase of an interest in an overriding oil payment out of a part of the production from what was known as the A. P. George oil lease covering 440 acres of land in Fort Bend County, Texas.

Appellant denied that he had ever contracted to purchase the overriding oil payment in controversy from appellee. He alleged that he had been led to believe by appellee and his agent, Lewis Dickson, that the oil payment which he had contracted to purchase would be paid, until fully paid out, from the total proceeds of a full 1/64 of all oil produced from said lease and that, at no time during the negotiations for the sale thereof, was he apprised of the fact that said oil payment with respect to said land was only payable out of segregated 20-acre tracts with a $2,000 limitation on the amount payable from each of such 20 acre segregated tracts. By trial amendment he alleged that appellee had waived his right to specific performance of said contract by reason of the fact that after he, appellant, had refused to perform said contract, appellee had continued to claim and use the oil payment in question as security for his personal indebtedness.

In answer to special issues submitted, the jury found that Lewis Dickson, who represented appellee in the negotiations which led to the execution of said contract, did not state to appellant that such oil payment was to be paid from the total proceeds of a full 1/64 of all the oil produced from the entire 440 acre George lease; that

appellant, at the time he signed said contract, dated October 9, 1941, did not understand and believe that the oil payment referred to in said contract was being paid from the total proceeds of a full 1/64 of all the oil produced from the entire George 440-acre lease and that the reasonable market value of the oil payment involved in the controversy was $14,000.

Based on the answers of the jury to such special issues, judgment was rendered for the specific performance of said contract by appellant paying into the registry of court the balance due on the contract price for said oil payment, with interest.

On June 20, 1939, Superior Oil Company, the owner of the A. P. George oil lease, entered into a contract with appellant to assign said lease to him in so far as it covered all horizons down to the Frio sand formation, in consideration of his agreement to drill a well thereon, reserving to the company, however, an overriding royalty of 1/8 of the oil and gas produced from flowing wells and 1/16 of that produced from pumping wells. Appellant thereafter drilled such well and completed it as a producer and on September 15, 1939, the company executed and delivered to him an assignment of the lease in conformity with the terms of the drilling contract. Thereafter from time to time until August, 1940 appellant drilled nine additional oil wells on the leased premises.

By instrument dated June 27, 1939, filed for record on August 19, 1939, and recorded in Volume 180, page 50, Deed Records of Fort Bend County, Texas, Superior Oil Company conveyed to John M. Byers an overriding oil payment of $200 per acre payable out of the oil produced from the A. P. George lease. Under the terms of the conveyance the lease was to be divided into 20 acre tracts, as nearly as practicable, after the completion of the first producing well and the acreage oil payments as to each tract would be payable only out of oil produced from a well or wells drilled thereon. If wells were drilled by the company the oil payment would be paid from 1/8 of 7/8 of the oil produced, but if the lease were assigned the oil payment would be paid from 1/32 of the oil produced, but in any event each 20 acre unit would stand alone and the acreage oil payment as to each unit would be payable only when, as, and if sufficient oil to make such payment should be produced from a well or wells

drilled on that unit. By instrument dated December 1, 1939, the company and Byers divided the lease, for the purpose of such oil payments, into 20 units varying in size from 20 to 34.3 acres.

By instrument dated January 11, 1940, and filed for record on January 15, 1940, and recorded in Volume 187, page 536 of the Deed Records of Fort Bend County, Texas, Byers assigned a 1/2 interest in said oil payment to appellee. This assignment recites that the oil payment is "an overriding payment out of oil in the sum of $200.00 per acre embraced in said land, payable only out of the production produced, saved and marketed from respective 20 acre tracts."

After several conferences between appellee's representative, Lewis Dickson, and appellant, the parties hereto entered into the following contract, dated October 9, 1941:

"Houston, Texas, October 9, 1941.
"Mr. John H. Blaffer,
Commerce Building,
Houston, Texas.
"Dear Sirs:

"This will confirm our trade relative to the sale to you by me of all my interest in a certain oil payment conveyed to me by John M. Byers, to whom the same was conveyed by the Superior Oil Company, covering the A. P. George 440 acre tract in the Robert Peebles Survey in Fort Bend County, Texas, which lease is now being operated by you.

"The total amount under said conveyance to be received by me, when and as produced, according to the contracts and assignments, is $44,000.00, of which, to date, approximately $4,200.00 has been paid; the payments now being received by me amount to approximately $260.00 per month and these payments come out of 1/64th of the oil produced from said lease.

"Upon the execution and delivery by me to you of a conveyance of all my interest in the aforesaid oil payment, you are to pay me in cash the sum of Fifteen Thousand Dollars ($15,000.00); this transfer shall be effective as of October 1st, 1941, insofar as payments are to be received. It is understood that I shall pay a commission to Mr. Lewis Dickson, if the sale is completed, and that he is to handle the legal details of the transfer.

"The assignment or conveyance is to be made and delivered to you, or your assigns,

and the consideration is to be paid by you to me and this trade completed within ten (10) days

(JHB initialed)

from this date.

"Please sign you acceptance of the trade on one copy of this letter and return it to me for my files.

"Very truly yours,

"C. S. Powers (signed)

"C. S. Powers

"Accepted:

"John H. Blaffer (signed)

"John H. Blaffer."

The above contract in the form of a letter was prepared by appellee, and was delivered to appellant by Lewis Dickson with a copy of the proposed assignment of the oil payment from appellee to appellant. Appellant had a copy of the proposed assignment before him at the time he signed the letter contract. He testified, however, that he did not read the proposed assignment at that time, though the record shows that the following interlineations were made in the proposed assignment at that time: The consideration therein was changed from $15,000 to "$10,000 and other good and valuable considerations", after which the words, "John H. Blaffer of 1203 Commerce Building, Houston, Harris County", were inserted and the name of John H. Blaffer was inserted as assignee in the assignment.

The jury found in answer to special issue No. 5 that appellant, at the time he signed said letter contract, did not believe that the oil payment referred to therein was being paid from the total proceeds of a full 1/64 of all the oil produced from said lease.

The material parts of said proposed assignment, which was before appellant at the time he executed said letter contract, read:

"That, whereas, on November 3, 1938, A. P. George et ux. executed an Oil and Gas lease to The Superior Oil Company, covering four hundred and forty (440) acres of land, more or less, in the Robert Peebles Survey, Fort Bend County, Texas, for exact description of which reference is hereby made to said lease, recorded in Vol. 180, page 8 of the Deed Records of said Fort Bend County, Texas.

"And, whereas, said The Superior Oil Company, by assignment dated June 27, 1939, and recorded in Vol. 184, page 5,

Deed Records of said Fort Bend County, Texas, granted unto John M. Byers an overriding payment out of oil in the sum of two hundred dollars ($200.00) per acre embraced in said lands, payable only out of the production produced, saved and marketed from respective twenty (20) acre tracts, all as set forth in said assignment as modified by supplemental agreement designating the respective tracts, dated December 1, 1939, and duly executed by The Superior Oil Company and John M. Byers, reference to which supplemental agreement and the map hereto attached, being hereby made for identification of said tracts.

"And, whereas, said John M. Byers, by assignment dated January 11, 1940, and recorded in Vol. 187, page 536, Deed Records of said Fort Bend County, Texas, assigned and conveyed to C. S. Powers one-half (1/2) of all of the rights and interests conveyed to the said John M. Byers in said agreement hereinabove referred to and described, with the right to receive direct from the purchaser one-half (1/2) of all sums accruing under and by virtue of said overriding agreement as supplemented.

"Now, therefore, for and in consideration of the premises and of the payment of *Ten Dollars and other good and valuable* ~~fifteen thousand dollars ($15,000.00) in cash~~ *consideration* by    John H. Blaffer    of 1203 Commerce Building, Houston, Harris County,

to said C. S. Powers paid, receipt of which is hereby acknowledged, the said C. S. Powers as assignor does hereby sell, assign, transfer and convey unto

said John H. Blaffer

as assignee, all of the rights and interests conveyed to said C. S. Powers by the said John M. Byers, in the aforesaid instrument dated January 11, 1940, of record in Vol. 187, page 536, Deed Records of Fort Bend County, Texas, to which instrument and the record thereof reference is here made for all purposes."

On or about October 17, 1941, appellant, notified appellee that he would not purchase said oil payment in accordance with said letter contract.

On October 18, 1941, appellee sent the executed assignment to the Union National Bank in Houston, with the request that the bank deliver the assignment to appellant upon payment by him to the bank of the sum of $15,000 for the account of appellee. On the same day the Union National Bank

wrote appellant advising him that the executed assignment of said oil payment was in its possession and that the assignment, together with a release of appellee's indebtedness to the bank, would be delivered to him upon the payment of the contract price therefor.

Upon appellant's refusal to do so, appellee filed this action for specific performance of said contract.

Under his first point appellant contends that, by using the oil payment involved herein as security for his personal indebtedness, and by accepting and retaining sums paid under the terms thereof, after receiving notice that appellant had refused to carry out his agreement to purchase said oil payment under the terms of said letter contract, appellee had waived any right that he might have had to the remedy of specific performance of this contract.

Prior to the execution of the latter contract in question, appellee had borrowed the sum of $7,000 from the Union National Bank in Houston, and had pledged the oil payment to the bank as collateral security for the payment thereof. At the time of the execution of the contract this indebtedness had been reduced to $3,250. Later, the balance remaining unpaid on said note was merged with another note owing by appellee to the bank, and a new note in the sum of $5,500 was executed.

At the time of the trial appellee admitted that he owed the bank $8,000. It is not clear from the record, however, whether or not this entire amount was secured by the oil payment in question.

On October 17th appellant notified appellee that he would not go through with the purchase of such oil payment. On October 18th the Union National Bank wrote appellant a letter containing the following statement: "Mr. Powers of the Powers Production Company, has left with us an assignment of an overriding royalty payment * * * with instructions that we are to release to you this assignment, together with release of lien covering the indebtedness to us, which we now hold, upon the payment by you to us for his account of $15,000.00. The documents are in our note department and if you will have payment made there we will be glad to release them to you."

At the time the letter contract was executed the bank had a release of its lien against said oil payment secured by appellee's indebtedness to the bank signed, but not acknowledged, for delivery to appellant upon the payment of the sum specified. The representative of the bank testified that the release would have been acknowledged and delivered to appellant upon payment of the $15,000.

On October 19, 1941, appellee also wrote appellant stating: "The assignment from me to you is in that bank (Union National Bank) and upon payment by you to the bank for my account of the agreed sum of $15,000.00 the bank will deliver the assignment and the release of the lien to you either today or Monday. I placed this assignment in the bank for your convenience so that if I should not be personally available when you are ready to close the trade you will know where it can be located."

On the same date appellee also sent appellant a copy of his letter to the Union National Bank, and in an accompanying letter he advised the bank: "Upon the payment by Mr. Blaffer to you for my account of the sum of $15,000.00 you will please deliver to Mr. Blaffer this original assignment, together with the release of the lien covering my indebtedness to you, which release you executed several days ago and now have in your possession."

At the time judgment was entered a release of the indebtedness and lien held by the Union National Bank and an executed copy of the assignment from appellee to appellant was filed with the papers in the case.

It is undisputed that appellee had collected and retained the sum of $1,991.81 paid to him from the oil payment after the execution of said contract of sale. However, later payments were held pending the determination of the suit, and the judgment rendered by the trial court was credited with that amount.

█ It is the general rule that, in a suit either by the vendor or by the purchaser to enforce a contract for the sale of real property where the incumbrance, the continued existence of which is not contemplated by the contract, can be discharged by mere payment and is not a larger amount than the purchase money due, the court may make provision for payment of the incumbrance out of the moneys that are payable to the vendor, and, in this connection, may direct that the amount should be paid directly to the holders instead of to the vendor, even though such holders are not

before the court, or the court may authorize the purchaser to discharge the incumbrance on failure of the vendor to discharge them and to take credit on, or reimburse him-self from, the purchase price. 58 Corpus Juris 1234.

In the early case of Upton v. Maurice, Tex.Civ.App., 34 S.W. 642, 644, the court, quoting with approval from Pomeroy on Equity, lays down the following rule: "As stated by Mr. Pomeroy (Pom.Spec.Perf., § 452): 'If the land contracted to be sold turns out to be subject to charges, easements, rights of user, or incumbrances which extend to the whole estate, and cannot be compensated for and removed by an application of the purchase money, the vendor is not entitled to enforce the contract; but, if the charge is a slight or immaterial one, and especially if it be an incumbrance by mortgage or judgment, which can be paid off and removed by means of the purchase money, the court may decree a specific performance, making provision in the decree for removing the incumbrance.' The charges or liability for taxes alleged and shown in the case, if ascertainable by the court, might be provided for by compensation."

Appellant relies on the case of Kluck v. Leuschner, Tex.Civ.App., 70 S.W.2d 768, in support of his contention that because of appellee's indebtedness to the Union National Bank, he was not entitled to specific performance of the contract.

We do not think that the opinion in that case is in conflict with the rules above referred to, and do not construe the opinion in that case to hold that the mere existence of an indebtedness against a property will defeat the right of the seller to specific performance of the contract. It does hold that the right to specific performance may be waived or abandoned, and that the existence of an indebtedness and the creation and establishment of other debts and liens against the subject matter of the contract, after the execution of the contract, is evidence of the intention of the seller to disavow the contract and to waive his right of specific performance. However, the question to be determined in each case is one of intent, and is not merely a question of whether an indebtedness existed against the subject matter of the contract after the breach thereof.

■■ In this case it is undisputed that appellee gave appellant notice that he was insisting on performance of the contract immediately after he received appellant's notice that he did not intend to be bound thereby, and that, as evidence thereof, he had the bank make and tender to appellant an assignment of the payment and a release of its indebtedness, conditioned upon the payment by appellant of the agreed purchase price. Instead of acquiescing in the abandonment of the contract, we think that appellee indicated, by overt acts, his intention to insist upon its performance. And since no request was made by appellant for the submission of an issue inquiring as to whether appellee had waived his right to specific performance, it is to be inferred that the trial court found from the evidence, with the acquiescence of the parties, that it was not the intention of appellee to abandon his right to specific performance of said contract. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 85; Nixon v. Hirschi, 134 Tex. 415, 136 S.W.2d 583, 585; Raynes v. Germany, Tex.Civ.App., 144 S.W.2d 981; Rule No. 279, Texas Rules of Civil Procedure.

■ Appellant assigns error in the action of the court in refusing to hold as a matter of law that, from the undisputed evidence, appellant had been induced to sign said contract of sale by reason of misrepresentations therein as to the true character of the oil payments which appellee thereby agreed to sell, and that appellant, at the time he signed said contract of sale, was laboring under a mistake as to the true interest appellee was thereby offering to sell, which mistake was induced by misleading recitals written into said contract by appellee. These contentions cannot be sustained, for the reason that the jury found against each of these contentions upon evidence of such probative force that this court would not be warranted in setting aside either the verdict of the jury or the judgment of the trial court based thereon. Petroleum Producers Co. et al. v. Stolley et al., Tex.Civ.App., 137 S.W.2d 207; Perry et al. v. Citizens Life Ins. Co., Tex.Civ. App., 163 S.W.2d 743.

■ Appellant contends that the contract in question is inequitable and oppressive and that therefore it is not subject to specific performance. This contention is, we think, met by the jury's answer to Special Issue No. 7, wherein the value of said oil payment is found to be the sum of $14,000. The contract price for said oil payment was $15,000. The con-

tract also provided that appellee should pay Lewis Dickson a commission for his services in negotiating said sale of $1,000 out of the purchase price for said oil payments. There is also evidence in the record from which the jury would be justified in finding that the oil payment in question had a value substantially in excess of the purchase price called for in said contract, in that the assignment from Superior Oil Company to John M. Byers, under whom appellee holds, provides that, in the event of future production from said lease by Superior Oil Company from sands below the Frio sand, the assignee therein shall have the right to receive 1/16 of all oil produced. This production was retained by the Superior Oil Company in its assignment to appellant, but passed by assignment to appellee through John M. Byers.

We have carefully considered all other points presented in appellant's brief. None of them, in our opinion, show error in the record which requires a reversal of the case.

The judgment of the trial court will be, in all things, affirmed.

Affirmed.