## FISHER v. WILSON.
### No. 13577.

Court of Civil Appeals of Texas. Dallas.
Dec. 8, 1944.

Rehearing Denied Jan. 12, 1945.

Dissenting Opinion Jan. 16, 1945.

George Clifton Edwards, of Dallas, for appellant.

Geo. K. Holland, of Dallas, for appellee.

BOND, Chief Justice.

This is a suit for specific performance of a written contract involving, principally, real estate; and, in the alternative, for damages for breach or failure to perform the contract. The contracting parties in litigation, Mrs. Josephine G. Wilson, appellee, and Mrs. Pearle Mercer Fisher, ap-

pellant, will be designated in this opinion as they were in the court below, as plaintiff and defendant respectively.

The purported contract 'in suit is composed of two instruments, one drafted by the defendant and the other by the plaintiff, each signed by both parties. The instrument drafted by the defendant is as follows:

"July 21/43 Contract of Sale.. Recd of Mrs. Josephine Wilson $300 in part payment on brick duplex & garage apt located at 4328-30 Cedar Springs on this 21st July 1943 at a price of Sixty Three Hundred & Fifty dollars including furniture at 4330 except one hexagon large table in living room, this also includes rollaway bed in garage apt. Terms all cash, abstract to be furnished by seller. Room at back not included."

The instrument drafted by the plaintiff is as follows:

"Dallas, Texas July 21, 1943 Received of Mrs. Josephine G. Wilson $300.00 in cash as earnest money on the purchase of property at 4328-4330 Cedar Springs Road total consideration being $6,350.00, including entire furnishings of north side apartment (excepting one antique library table), furniture includes one frigidaire and 3 Murphy beds—(1 without mattress). This is a cash consideration when all papers, abstract, etc. have been examined & accepted by Josephine G. Wilson. Full possession of property to be given by Aug. 15th, 1943."

In plaintiff's petition she sought to enforce performance of the contract as against Lot 13, in Block N/2047, Perry Heights Addition to the City of Dallas, Dallas County, Texas, according to the map or plat of said addition recorded in Vol. 2, page 257, Map Records of Dallas County, and certain furniture and furnishings located on said real estate, consisting of a rollaway bed in what is termed "garage apartment," and all household furniture located in the apartment known as No. 4330, except one hexagon table and a "room in back" consisting of a small removable wooden structure. Plaintiff alleged that she tendered and paid the $300 to defendant as "earnest money," and deposited the balance of the consideration in the registry of the court to abide the decision on the issue. In the alternative, plaintiff sought damages in the sum of $1150 by virtue of the loss of profits sus-

tained in the transaction. She also asked that a receiver be appointed to take charge of all of said property and the money tendered into court pending suit; and, on final hearing, for fee simple title in and to the real estate above described, together with the right of possession thereof; and to require the defendant to discharge and pay off and have released all encumbrances and liens on said property; or, in the alternative, that the money tendered into court be applied towards the payment and discharge of such encumbrances and liens as may be shown against said property. Plaintiff further alleged, in the alternative, that all rents and revenues collected by defendant on said properties be deducted from the amount of the tender and be delivered to her, and that she have judgment for such rents and revenues from August 15, 1943, to final disposition of this cause, and for adjustment of equities in all matters as shall be proper between the parties.

The defendant answered by general denial, numerous special exceptions to the pleadings, plea of non est factum as to the date in plaintiff's draft of the contract when possession was to be delivered, and interposed the statute of frauds, Art. 3995, R.S., and numerous grounds of equitable avoidance to enforcement of the alleged contracts, with tender to plaintiff of all monies received by her as "earnest money" in the transaction.

On trial to a jury, verdict was rendered on two submitted issues: (1) That the defendant signed the contracts agreeing for full performance by August 15, 1943; and (2) that by reason of defendant's refusal or failure to perform the contracts, plaintiff sustained damages in the amount of $686.65. In due order defendant objected to the charge and presented motion for judgment non obstante veredicto, both of which were overruled; whereupon the court, over defendant's objections, disregarding the findings of the jury as to plaintiff's damages, entered judgment in favor of plaintiff for specific performance of the contracts, for possession of Lot 13, in Block N/2047, Perry Heights Addition to the City of Dallas, Texas, for personal property, described as one refrigerator, stove and rollaway bed located in a rear garage apartment on said lot, all household furniture and furnishings except one large hexagon antique library table in "Apart-

ment 4330," and decreed equitable title to said properties in plaintiff as of August 15, 1943, with rents and revenues at $92.50 per month from said date and "continuing to the date the said defendant, Pearle Mercer Smith, shall have delivered to the plaintiff full possession of the said real estate and personal property," less $91.50 for insurance, taxes and domestic utilities paid by defendant in reference to said properties. Such rentals were adjudged a credit in favor of plaintiff against the money tendered into court. The court refused appointment of a receiver, but decreed that the clerk of the court carry into effect the terms of the judgment—pay to plaintiff such rentals as shall have accrued from August 15, 1943, to date of judgment, and that which shall thereafter accrue to date of delivery of possession of the property to the plaintiff, less $91.50; that the clerk pay to Home Owners Loan Corporation, a lien holder on said real estate, the sum of $1470; and, after making all aforesaid deductions and payment of all court costs, the balance of such tender to be paid to the defendant, only upon her executing a warranty deed to the real estate and delivering possession thereof to the plaintiff. To the action of the court, defendant appeals.

■ The statute of frauds, R.S.1925, Art. 3995, subd. 4, denies a right to maintain an action upon an oral contract "for the sale of real estate"; and the statute, R.S. Art. 1288, which has sometimes been referred to as a "statute of frauds" and as a "statute of conveyances," denies a right to convey a freehold estate in lands and tenements unless the conveyance be declared by an instrument in writing duly executed. The statutes do not declare a parol contract for the sale of land to be illegal or void; they merely render such contracts voidable at the option of the party who is charged or bound, by making it unenforceable through judicial proceedings. A rule of evidence is established by the acts, and thereby enables a party to successfully resist enforcement of an agreement which is not within the purview of the statutory provisions. The parol evidence rule also requires the exclusion of parol evidence which is offered for the purpose of varying or affecting the written contract, and it is not permissible because the writing does not contain the full agreement of the parties thereto. In order that

a contract for sale of real estate may be specifically enforced, it must be definite and certain in its terms so as to reasonably define within itself the rights of the respective parties, the real estate intended to be conveyed, and its location. Indeed, such contracts may be aided by parol proof of extrinsic facts as may be used for that purpose. The rule is stated in 38 T.J., p. 682, Sec. 25, that "when the contract refers to other instruments containing a good description, or where the description may be made certain by reading the law into the contract and by referring to public documents on file in a public office," extrinsic facts may be shown in aid of the contract. Thus it will be seen that a contract of sale of real estate will not be successfully enforced unless it describes the land intended to be conveyed, or within itself furnishes a key or means by which it may be identified with reasonable certainty. Watson v. Baker, 71 Tex. 739, 9 S.W. 867; Jones v. Carver, 59 Tex. 293; Whitehead v. Reiger, Tex.Com.App., 6 S.W.2d 745; O'Herin v. Neal, Tex.Civ.App., 56 S.W.2d 1105; McAllen v. Raphael, Tex.Civ.App., 96 S.W. 760, error ref.; Penn v. Texas Yellow Pine Lumber Co., 35 Tex.Civ.App. 181, 79 S.W. 842; Cammack v. Prather, Tex.Civ.App., 74 S.W. 354; Prather v. Cammack, Tex.Civ.App., 84 S.W. 1183; Kellner v. Ramdohr, Tex.Civ.App. 207 S. W. 169. In the last cited case the rule is extended that the writing itself must either on its face identify the land, or it must expressly or by implication refer to some instrument, document, map, plat, record, or outside fact, by which the land can with reasonable certainty be identified.

■ So in the contracts involved here, it will be observed that there is nothing to identify the real estate described in plaintiff's petition; at most, the contracts refer to two apartment houses known as 4328 and 4330, a rear garage apartment, and certain household furniture in apartment 4330, and some items of furniture in the garage apartment. The numbers assigned to the apartments indicate the house, and not the real estate upon which the houses are situated. The location—state, county or city—of the real estate intended to be conveyed, is not given, nor is it described in a manner to furnish means or index by which it may be located by extrinsic evidence. The covenants for the seller to furnish "abstract," and "when all papers, ab-

stract, etc., have been examined and accepted by Josephine G. Wilson," the purchaser shall have possession, do not refer to any particular abstract, papers, maps, plat record, or outside fact, by which the real estate intended to be conveyed can be identified. The furnishing of an "abstract," "all papers, abstract," etc., by the seller are subsequent matters, and not, by reference or otherwise, made a part of the contracts. Thus we think that as a matter of law the contracts are insufficient to enforce specific performance, or decree damages on account of failure or refusal to convey the real estate in suit.

In the trial of the case, over defendant's objection, plaintiff offered parol evidence to identify the real estate intended to be conveyed, showing, in effect, that the duplex and garage apartments are located at 4328-4330 Cedar Springs Avenue, sometimes called Cedar Springs, and sometimes Cedar Springs Road, in the City of Dallas, Dallas County, Texas; and that the real estate on which the apartments are located is described in deeds, abstracts, and maps in defendant's possession, as Lot 13, in Block N/2047, of Perry Heights Addition to the City of Dallas, according to the map thereof recorded in Vol. 2, p. 257, Map Records of Dallas County, Texas. We think the evidence was inadmissible, in absence of sufficient data in the contracts making such extrinsic evidence applicable under the rules stated; and, the defendant having interposed the statute of frauds to avoid enforcement of performance, judgment of the court below should be reversed and judgment here rendered denying enforcement of the alleged contract.

Furthermore, it will be observed that the verdict of the jury determined that this litigation be settled in damages in favor of plaintiff for $686.65. Suits for specific performance are based in equity, "as a matter of grace and not of absolute right." Such will be granted, or withheld, upon consideration of all facts and circumstances attending the case. Generally speaking, it may be said that specific performance, where permissible under the terms of contract, will be granted when it is apparent from a view of all the circumstances that it will subserve the ends of justice, and it will be withheld when, from a like view, it is apparent that performance will result in hardship or injustice to either of the parties. Subsequent events may be such as to require denial of specific per-

formance. Aside from the right to avoid enforced specific performance of the contract, as coming under the statutes of fraud, supra, the defendant raised in pleadings and proof pleas of equity excusing performance, and challenging the power of the trial court to administer upon her estate through the clerk of the court, and, out of the money tendered into court for specific performance, to pay Home Owners Loan Corporation the sum of $1470, and force release of a purported lien on the real estate described in the judgment; and to pay to plaintiff the amount of rents and revenues derived from the apartments from August 15, 1943, at the rate of $92.50 per month, and to continue such payments until this litigation is finally ended; and to pay all costs incident to the litigation, other than cost of the receivership application; and, of the residue of the tender, pay to defendant upon her executing a warranty deed to the real estate and delivering possession thereof, with the furniture involved, to plaintiff. In the light of this record, should we be in error in holding that specific performance of the contract is inhibited by the statute of frauds, we, nevertheless, are of the opinion that the court erred in judgment, as would reverse the cause and remand it to the court for a new trial: First, there is no pleading making the Home Owners Loan Corporation a party to this suit to enforce payment of the debt, or release of the loan on said property, and the contracts in suit impose no such obligation upon the defendant, if, in fact, she could do so; and there is no evidence on which the court could enforce such obligation. The only testimony in the record is that the balance of the indebtedness against the properties due Home Owners Loan Corporation on January 10, 1944, was the sum of $1491.41. Second, there is neither pleading nor evidence to sustain the decree for rents and revenues. The pleading is to the effect that plaintiff, by virtue of the contracts, has had an equitable title to the property involved since August 15, 1943, and by the payment of the full consideration into court, she is entitled to the rents and revenues from said properties. The proof, over defendant's objection, on this issue was to the effect that since July 21, 1943, the defendant received from apartment 4328, furnished, the sum of $42.50 per month, and from apartment 4330, furnished, $52.50 per month. There is no evidence of probative force showing what

the reasonable rental of the two apartments would be with the furniture as described in the contracts, or what would be the reasonable rental value of the property in futuro. Mrs. Fisher testified, over objections:

"Q. Mrs. Fisher, what rents on the apartments have you been getting since July 21, 1943? A. $42.50 * * *.

"Q. What rents have you been getting on the apartment since then? A. $42.50 on one and $52.50 for the other.

"Q. Which apartments are those—4328? A. $42.50.

"Q. And on the other one, $52.50? A. Right.

"Q. They are each rented with the furnishings in them? A. Yes.

"Q. Now, do you have a price on the apartments without the furnishings? A. No.

"Q. What would the one at 4328 rent for without the furnishings? * * * A. I never rented it unfurnished, so I couldn't say. No.

"Q. If you were renting it without the furnishings, what price would you put on it? A. Right at the present time I would ask $40. for it unfurnished.

"Q. Is that what you would have asked for it in July 1943? A. I guess so. I don't know.

"Q. That is what you would consider a reasonable price for it unfurnished in July 1943? A. Yes. In ordinary times it would rent for about $35."

We think the pleadings and evidence are not within the terms of the contracts, and, even so, insufficient to sustain the judgment. It is evident that the contracts make no provision for payment of outstanding liens on said real estate; hence the lien holder, not being a party to the suit, the court was without power to enforce payment of the debt and require release of the lien. Then, too, the judgment is not final—extending a recovery of rents beyond the date of the decree. A final judgment is one that determines the rights of all parties to the suit, and leads to a final disposition of the cause that its ministerial officers can, with certainty, carry the judgment into execution without ascertainment of additional fact; and where such is not the case, the judgment is not final. The court having decreed no final amount of rents and revenues due to the plaintiff, but leaving such ascertainment to the clerk of the court after trial; and the court being without power to decree payment and release of the lien indebtedness on the real estate, the judgment of the court below cannot stand.

■ While there is no definite rule in the interpretation of contracts of this nature, or in determining equities between contracting parties, yet, if we be in error that the contracts here involved are not susceptible to enforcement, we feel that it would have subserved the ends of justice for the trial court, if permissible, to have followed the findings of the jury as to damages—rather than to enforce hardships on defendant by decree of specific performance for conveyance of the real estate. The contracts recite that the buyer put up $300 as "earnest money," implying forfeiture for failure or refusal to perform on plaintiff's part; the jury's verdict is that $686.65 would fully compensate the plaintiff for damages for like failure or refusal to perform on defendant's part. It will be observed that the penalty against defendant for breach of the contract greatly exceeds that of the plaintiff for a breach; then, too, plaintiff alleged in her petition that the property involved was, at the time of the transaction, worth the sum of $7500, and that she contracted to pay $6350; thus sought judgment for $1150 as profit damage. There is no proof in the record of probative value, as to the reasonable cash market value of the property, to sustain plaintiff's claim or the findings of the jury, Mrs. Fisher having testified, without properly qualifying as a witness to values, that she considered $7500 a reasonable price for the real estate with one apartment furnished and the other unfurnished; that she submitted to plaintiff a price of $6950, and later a price of $6500 at time of the transaction, and that plaintiff declined to accept the offer as being too high. Mrs. Fisher was further asked: "Q. Did you know the property was worth $7500?" To which she answered "No, I didn't know. I thought it should be, but I didn't really know the present value." Also, Mrs. Wilson testified: "Q. You told her (Mrs. Fisher) the place was worth about $6250, and you would give her that? A. I offered her $6250 after she had priced the place to me for $6500." Yet, it is our opinion that had the proof been to sustain the verdict of the jury on the element of

damages, equity justifies a reversal of the judgment for performance to convey.

Furthermore, the record shows that the defendant is a widow, living alone in a garage apartment at the rear of the real estate involved, insolvent and depending on the rents and revenues from the two apartments, 4328 and 4330 Cedar Springs Avenue for her livelihood. She testified that sometime in July 1943, she thought advisable to sell her apartments and move to the State of California for the benefit of her health, and, to that end, placed a sale advertisement in the Dallas papers, resulting in the execution of the unfortunate contracts in suit. Subsequently, she was unable to move to California, or find a place to live in the City of Dallas, due to house-shortage in war production centers; and, being under the impression that the two instruments in suit were mere evidence of payment of $300 on the proposed consideration, and that a contract specific in its terms to protect the rights of both parties, would be thereafter executed, she decided to withdraw her agreement to sell, and, within a few days after the date of the contracts, tendered return of the $300. On trial, defendant sought to offer evidence of her ill-health, the extent of such illness, and the advisability of her not moving to the State of California on account thereof. On plaintiff's objection, the proffer was denied by the court. We think if, in fact, the contracts are enforceable, she was entitled to introduce the proof on her plea of equitable grounds of avoidance of performance. Plaintiff also is a widow, living in her own home in one of the fashionable home centers of the City of Dallas—"Bluff View Estates"—and had money and property to invest in other real estate for profit. She entered into the contracts in good faith with the sole idea in view to reap profit in the transaction. We feel that under the disclosed facts and circumstances, equity would be better subserved not to enforce performance or to award damages on account thereof.

In view of our conclusion that the contracts are not susceptible to enforce performance, the judgment of the court below is reversed; judgment here rendered in favor of appellant that appellee take nothing by her suit, and the money tendered into the registry of the court below is decreed to appellee.

Reversed and rendered.

YOUNG, Justice (dissenting).

I disagree with the majority ruling that the involved realty was not identified with such reasonable certainty as to support plaintiff's case in specific performance. It appears too clear for argument that the writings, if not complete within their four corners, at least furnished all data from which a complete identification of the subject matter can be obtained. Nothing is lacking therein except the legal description, and reference is made to defendant's abstract, which is in the record as extrinsic evidence, disclosing the realty to be Lot 13, Block N/2047, Perry Heights Addition to the City of Dallas; thus meeting the test referred to in majority opinion that a contract of sale of realty will be enforced when it either "describes the land intended to be conveyed, or within itself furnishes a key or means by which it may be identified with reasonable certainty." One of the instruments is captioned "Dallas, Texas," showing the property to be in said City and County; the other paper carrying defendant's 'phone number showing her to be owner of the property known as 4328-4330 Cedar Springs Road, the subject of sale to plaintiff, whose earnest money is receipted for by the seller as part of the cash consideration, date of possession after examination of abstract being August 15, 1943.

Contracts far less definite in detail have been consistently upheld. See Morrison v. Dailey, Tex.Sup., 6 S.W. 426, 427, description " * * * my place, known as the 'James Perry Tract of Land' * * * "; Cunyus v. Hooks Lumber Co., 20 Tex.Civ. App. 290, 48 S.W. 1106, 1107, "Kountze, Tex., * * * one certain tract of land, known as the 'Vanmeter Survey,' being 2,000 acres, more or less"; Frazier v. Lambert, 53 Tex.Civ.App. 506, 115 S.W. 1174, dated Dallas, Texas, property described as "Lot twenty-seven, Block 3/929, and better known as #126 McKinnon Street"; Beaton v. Fussell, Tex.Civ.App., 166 S.W. 458, "my place in [the town of] London, Kimble county, Texas, consisting of four lots"; Sorsby v. Thom, Tex.Civ.App., 122 S.W.2d 275, 277, "Rock Island Plantation" and as "Cordsen Rock Island Ranch tract"; in last case the Galveston court holding "The description in the contract here involved was certain, in the sense that it was susceptible of being made certain by the extrinsic testimony pled and tendered

* * *," In Krueger v. Ewing & Co., Tex.Civ.App., 139 S.W.2d 836, 837, the contract of sale consisted of letters dated at San Antonio, describing the property as "San Gabriel Apartments," no other identification given. The suit was for specific performance, and description held sufficient, the court saying in such connection: "But a contract, we think, may also sufficiently describe property by its common or particular name by which it is known in the locality where situated. * * * The office of a description is not to identify the land, but to afford the means of identification, and when this is done, it is sufficient. Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which furnishes the means of identification."

In Watson v. Baker, 71 Tex. 739, 9 S.W. 867, 868, cited by the majority, our Supreme Court held sufficient the following description aided by relevant parol testimony: "situated six miles N. W. from Mt. Vernon, Tex., consisting of 2,500 acres of land" and as "situated on the south side of White Oak creek, one mile from the bottom * * *." In Stroburg v. Walsh, Tex.Civ.App., 203 S.W. 391, 393, the court said: "For example, a deed to a lot may describe the same as lot No. 2, in block No. 15, in Austin, Tex., as shown by the map of said city, giving volume and page where same is recorded, and yet such deed would not convey to any one not familiar with such city any idea as to the location of such lot. But no one denies that its location might be proven by the oral testimony of any one who was familiar with the location of such lot. The same would be true if the lot was described as *being located at the intersection of certain named streets,* or if a tract of land was described with reference to certain natural or artificial monuments." (Italics mine). And in Spires v. Price, Tex.Civ.App., 159 S.W.2d 137, 139, the description was attacked as insufficient, the contract providing, however, for furnishing of abstract by seller. It was held: "further, the contract, properly interpreted, obligated the seller to furnish abstracts of title which was done, thereby, we think, *rendering the description in said abstracts available, if necessary, in aid of the description."* (Italics mine.)

In 49 Am.Jur., Sec. 115, pp. 134, 135, is the statement: "A description merely as a street number of a named street in a named town has been held to be sufficient"; citing L.R.A.1918C, which in turn contains annotations from some dozen American states to the effect that a street and house number designation of real property aided by extrinsic facts, fully satisfies the statute.

Surely, in view of the above applicable rules and authorities, there can be no doubt but that the instant contract description is adequate predicate for plaintiff's action; certainly so, when aided by the admitted extrinsic evidence; and the majority has erred in ruling to the contrary. "The statutes of frauds and conveyances look to the performance and not to the defeat of a contract." Wewerka v. Lantron, Tex.Civ. App., 174 S.W.2d 630.

Relative to other conclusions of the majority, it will be noted that plaintiff's right of possession under the instruments was August 15, 1943, prior to which time her tender of the entire cash consideration to Mrs. Fisher persisted. The property was revenue bearing at all times ($95 per month), plaintiff having also bought the furnishings of the north apartment. The trial court found reasonable rental value of the space to be $52.50 for north apartment and $40 for the other, unfurnished; the judgment reciting that, as against the purchase money in court, plaintiff was entitled to a credit of $92.50 per month "as the reasonable rentals on said property exclusive of the portion thereof personally occupied and used by the defendant." This was a proper requirement, for, in decreeing specific performance in favor of the purchaser where the vendor has breached the contract and wrongfully remains in possession, the amount of purchase price may be offset by whatever benefits the vendor may derive from his wrongful possession; Crossland v. Hart, Tex.Civ.App., 234 S.W. 558.

Plaintiff's tender into court was $6141.50 which, with the previous $300 of earnest money, made up the total consideration. Without dispute the sum of $1470.07 was found owing to Home Owners Loan Corporation as balance due on a first lien; and further judgment recitals awarded HOLC such amount from the registry fund, together with $92.50 per month to plaintiff from August 15, 1943, "to date of delivery of said property in accordance with this judgment." The majority holds invalid plaintiff's above judgment in the following

**194**

particulars: (1) No evidence of probative force in support of these rental findings; (2) the contract making no provision for payment of first lien debt to HOLC, an outside party; and (3) no finality of judgment because "extending such recovery of rents beyond date of decree." I differ from the majority view in the respects just named. Defendant was a woman well experienced in real estate values and transactions, having made numerous deals both in Texas and California during past years; in the fall of 1943 making application for license as a real estate operator. Mrs. Fisher stated that the reasonable rental of apartment 4328, unfurnished, was $40 per month; the north apartment (4330) being presently occupied by tenants at $52.50 per month, its reasonable rental value was thereby established; the furnishings thereof belonging to appellee pursuant to such sale.

The decree was not objectionable because ordering payment of the first lien. Plaintiff's transaction with defendant was wholly for cash, out of which defendant's debt to the first lienor was properly deductible. "It is the general rule that, in a suit either by the vendor or by the purchaser to enforce a contract for the sale of real property where the incumbrance, the continued existence of which is not contemplated by the contract, can be discharged by mere payment and is not a larger amount than the purchase money due, the court may make provision for payment of the incumbrance out of the moneys that are payable to the vendor, and, in this connection, may direct that the amount should be paid directly to the holders instead of to the vendor, even though such holders are not before the court," Blaffer v. Powers, Tex.Civ.App., 169 S.W.2d 536, 539, 540. And such judgment is in all respects a final one. The court therein fully adjudicated the rights of both parties to the fund, leaving only to its clerk the ministerial duty of distribution.

Plaintiff's cause of action was primarily for specific performance, alternatively in breach of contract; and the court in exercise of its discretion upon trial submitted a damage issue, to which the jury answered $686.65. The court's favorable action on plaintiff's primary count rendered the jury issue on damages immaterial; the decree of specific performance being in effect a denial of damages, Crossland v. Hart, supra.

In this connection the majority appears to hold that, even though the contracts are susceptible of specific performance, yet plaintiff should have been limited to the finding of damages as better subserving the "ends of justice"; concluding the point, however, by discovering no proof in the record of probative force to sustain damages. The statement is there made that "suits for specific performance are based in equity as a matter of grace and not of right." If the rule announced is intended to include contracts for sale of real estate, again I disagree. Says the Commission of Appeals, Milliken v. Townsend, Tex.Com. App., 16 S.W.2d 259, 260: "Counsel for Mrs. Milliken insist that Townsend has an adequate remedy at law, in that a breach of Mrs. Milliken's obligations under the contract affords him cause of action for damages. This legal remedy is regarded in equity as inadequate when the subject-matter of the contract sought to be specifically enforced is real estate." See also Pom. Eq. 5th Ed. Secs. 221b, 1402. And though not material to the judgment under review, the jury's alternative finding had support in competent testimony relative to cash market values. Appellant vendor, upon examination by plaintiff's counsel, said:

"Q. Mrs. Fisher, in your petition you state that you advertised your place at $7500 at one time? A. Yes.

"Q. Is that the value you considered the place to be worth? * * * A. I would have sold it with one apartment furnished and one unfurnished, and that is the price I had on it.

"Q. At $7500? You considered that the reasonable price of the place with one apartment furnished and the other unfurnished? A. Yes.

"Q. Was that the price you considered at the time you said you advertised it at $7500? A. Yes."

The foregoing evidence is of probative force, Mrs. Fisher having had previous experience in real estate transactions, was the property owner, with presumably special knowledge concerning the matters about which she testified.

Lastly, the majority opinion holds that neither specific performance nor damages can be required of defendant because (1) "Defendant raised in pleading and proof pleas of equity excusing performance" and (2) that "Under the disclosed facts and circumstances equity would be better sub-

served not to enforce performance or to award damages on account thereof." Let us briefly examine the record, ascertain the nature of defendant's equity defenses, and view the facts and circumstances whereby a written obligation, voluntarily executed, has been thus excused. The majority finds that defendant was "insolvent" and in "ill-health," and that such were important factors in her favor. Defendant's pleading carries no allegations of ill-health; expressly denying insolvency and asserting that "while she is not a rich woman, she is able to satisfy her monetary obligations."

Aside from a plea that "August 15, 1943," was written into the contracts after execution (found against the appellant by the jury), the sole defense was that said sale was conditioned upon her finding another location as satisfactory as the premises in suit.

Defendant moved for instructed verdict and later for judgment non obstante; requesting no issues of fact, filing no objections to the court's charge or to the numerous judgment findings supplementing aforesaid jury verdict.

This record reveals a normal transaction in real estate, the contract price being arrived at by an owner willing but not obliged to sell, with a purchaser willing but not required to buy; entirely free of fraud, imposition or any hint of hard bargaining on part of appellee. Negotiations began with appellant's advertisement, viz.: "Owner leaving. Brick duplex, good rentals, home and revenue. J–88362," first asking $6950, final terms being agreed upon after several conferences. Defendant later deciding against removal to California, the instant controversy ensued. Except as pictured in appellant's brief, prepared by zealous counsel, I find no harsh, inequitable or oppressive features in the transaction sufficient to justify intervention by a court of equity; her defense actually emerging from a later change of plans, and a conclusion that the property was worth more. At this juncture, Mrs. Wilson might well have released the seller by acceptance of earnest money paid. It does not follow, however, that ipso facto a release may be judicially compelled. "Courts will not enter into an investigation and determine the wisdom of a bargain made by persons competent to deal with their own affairs." Bergstedt v. Bender, Tex.Com. App., 222 S.W. 547, 549: Simpson v. Green, Tex.Com.App., 231 S.W. 375; 49

Am.Jur., Sec. 60, p. 75. I "find no authority that would warrant a court of equity in this state to interpose its aid by declaring a moratorium against the enforcement of the terms of a solemn contract, voluntarily entered into by competent parties who are presumed to know the extent to which they bind themselves." Stone v. Watt, Tex.Civ.App., 81 S.W.2d 552, 555, writ ref.

No reversible error appearing, the judgment under discussion should be affirmed.